[S.F. No. 24083. Apr. 14, 1980.]

COMMERCIAL UNION ASSURANCE COMPANIES et al.,
Plaintiffs and Appellants, v.
SAFEWAY STORES, INCORPORATED, Defendant and
Respondent.

914

■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

COUNSEL

George A. Weinkauf, Jr., for Plaintiffs and Appellants.

Leonard M. Friedman as Amicus Curiae on behalf of Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Walter R. Allan, Bernard Zimmerman, Donald J. Putterman-Crigger and Wendell H. Goddard for Defendant and Respondent.

OPINION

**THE COURT.**—We granted a hearing herein in order to resolve a conflict between Court of Appeal opinions in this case and the earlier case of *Transit Casualty Co. v. Spink Corp.* (1979) 94 Cal.App.3d 124 [156 Cal.Rptr. 360]. After an independent study of the issue, we have concluded that the thoughtful opinion of Justice Sabraw (assigned) for the Court of Appeal, First Appellate District, in this case correctly treats the issues, and that we should adopt it as our own opinion. That opinion, with appropriate deletions and additions,* is as follows:

This case presents the question of whether an insured owes a duty [ ] to its excess liability insurance carrier which would require it to accept a settlement offer below the threshold figure of the excess carrier's exposure where there is a substantial probability of liability in excess of that figure.

*Facts*:

At all times relevant herein Safeway Stores, Incorporated (hereafter Safeway) had liability insurance coverage as follows:

(a) Travelers Insurance Company and Travelers Indemnity Company (hereafter Travelers) insured Safeway for the first $50,000 of liability.

---

*Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

■■■■■■■■■■■■

(b)   Safeway insured itself for liability between the sums of $50,000 and $100,000.

(c)   Commercial Union Assurance Companies and Mission Insurance Company (hereafter conjunctively referred to as Commercial) provided insurance coverage for Safeway's liability in excess of $100,000 to $20 million.

One Hazel Callies brought an action against Safeway in San Francisco Superior Court and recovered judgment for the sum of $125,000. Thereafter, Commercial was required to pay $25,000 of said judgment in order to discharge its liability under the excess insurance policy.

Commercial, as excess liability carrier, brought the instant action against its insured Safeway and Safeway's primary insurance carrier, Travelers, to recover the $25,000 which it had expended. Commercial alleged that Safeway and Travelers had an opportunity to settle the case for $60,000, or possibly even $50,000, and knew or should have known that there was a possible and probable liability in excess of $100,000. It was further alleged that said defendants had a duty to settle the claim for a sum less than $100,000 when they had an opportunity to do so. Commercial's complaint attempts to state two causes of action against Safeway and Travelers, one in negligence and another for breach of the duty of good faith and fair dealing.

Safeway demurred to the complaint on the grounds of failure to state a cause of action. The court sustained the demurrer with 20 days' leave to amend. When Commercial failed to amend its complaint, the complaint was dismissed as to Safeway. Commercial now appeals from the judgment of dismissal. []

The present case is unusual in that the policyholder, Safeway, was self-insured for liability in an amount below Commercial's initial exposure. While this status may explain Safeway's reluctance to settle, it remains to be determined if the insured owes an independent duty to his excess carrier to accept a reasonable settlement offer so as to avoid exposing the latter to pecuniary harm. [Both of Commercial's theories of recovery, negligence and breach of good faith, depend upon the existence of such a duty.]

■   It is now well established that an insurer may be held liable for a judgment against the insured in excess of its policy limits where it has

breached its implied covenant of good faith and fair dealing by unreasonably refusing to accept a settlement offer within the policy limits (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal. 2d 654, 661 [328 P.2d 198, 68 A.L.R.2d 883]). The insurer's duty of good faith requires it to "settle within policy limits when there is substantial likelihood of recovery in excess of those limits." (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].)

Although an insurance policy normally only carries an express statement of a duty to defend, an insurer's duty to settle is derived from the implied covenant of good faith and fair dealing which is part of any contract (see 4 Witkin, Summary of Cal. Law (8th ed., 1974) § 754, p. 3050, and cases collected therein). This duty was first recognized in *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654. The rationale for the *"Comunale* duty" was articulated by [] [us] at page 659: "It is common knowledge that a large percentage of the claims covered by insurance are settled without litigation and that this is one of the usual methods by which the insured receives protection. (See *Douglas* v. *United States Fidelity & Guaranty Co.,* 81 N.H. 371 [127 A. 708, 712]; *Hilker* v. *Western Automobile Ins. Co., supra.*) . . .

"The insurer, in deciding whether a claim should be compromised, must take into account the interest of the insured and give it at least as much consideration as it does to its own interest. (See *Ivy* v. *Pacific Automobile Ins. Co.,* 156 Cal.App.2d 652, 659 [320 P.2d 140].) When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim. Its unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing."

It has been held in California and other jurisdictions that the excess carrier may maintain an action against the primary carrier for [] [wrongful] refusal to settle within the latter's policy limits (*Northwestern Mut. Ins. Co.* v. *Farmer's Ins. Group* (1978) 76 Cal.App.3d 1031 [143 Cal.Rptr. 415]; *Valentine* v. *Aetna Ins. Co.,* 564 F.2d 292; *Estate of Penn* v. *Amalgamated General Agencies* (1977) 148 N.J. Super. 419 [372 A.2d 1124]). This rule, however, is based on the theory of equitable subrogation: Since the insured would have been able to recover from

the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted (see *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra*, 76 Cal. App.3d at pp. 1040, 1049-1050). Hence, the rule does not rest upon the finding of any separate duty owed to an excess insurance carrier.

Commercial argues that the implied covenant of good faith and fair dealing is reciprocal, binding the policyholder as well as the carrier (see *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789, 797 [139 Cal.Rptr. 91]). It is further contended, in effect, that turnabout is fair play: that the implied covenant of good faith and fair dealing applies to the insured as well as the insurer, and thus the policyholder owes a duty to his excess carrier not to unreasonably refuse an offer of settlement below the amount of excess coverage where a judgment of liability above that amount is substantially likely to occur.

This theory, while possessing superficial plausibility and exquisite simplicity, cannot withstand closer analysis. We have no quarrel with the proposition that a duty of good faith and fair dealing in an insurance policy is a two-way street, running from the insured to his insurer as well as vice versa (*Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co., supra*, 70 Cal.App.3d at p. 797; *Crisci* v. *Security Ins. Co., supra*, 66 Cal.2d at p. 429). However, what that duty embraces is dependent upon the nature of the bargain struck between the insurer and the insured and the legitimate expectations of the parties which arise from the contract.

The essence of the implied covenant of good faith in insurance policies is that "'neither party will do anything which injures the right of the other to receive the benefits of the agreement'" (*Murphy* v. *Allstate Ins. Co., supra*, 17 Cal.3d at p. 940, quoting from *Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878]). One of the most important benefits of a maximum limit insurance policy is the assurance that the company will provide the insured with defense and indemnification for the purpose of protecting him from liability. Accordingly, the insured has the legitimate right to expect that the method of settlement within policy limits will be employed in order to give him such protection.

No such expectations can be said to reasonably flow from an excess insurer to its insured. The object of the excess insurance policy is to provide additional resources should the insured's liability surpass a specified sum. The insured owes no duty to defend or indemnify the excess carrier; hence, the carrier can possess no reasonable expectation that the insured will accept a settlement offer as a means of "protecting" the carrier from exposure. The protection of the insurer's pecuniary interests is simply not the object of the bargain.

As [] [we have] stated: "The duty to settle is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose." (*Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at p. 941.) Similar considerations do not apply where the situation is reversed: where the insured is fully covered by primary insurance, the primary insurer is entitled to take control of the settlement negotiations and the insured is precluded from interfering therewith (see *Shapero* v. *Allstate Ins. Co.* (1971) 14 Cal.App.3d 433, 437-438 [92 Cal.Rptr. 244], quoting from *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 659-660 [320 P.2d 140]). Where, as here, the policyholder is self-insured for an amount below the beginning of the excess insurance coverage, he is gambling as much with his own money as with that of the carrier. The crucial point is that the excess carrier has no legitimate expectation that the insured will "'give at least as much consideration to the financial well-being'" of the insurance company as he does to his "'own interests'" (*Shapero, supra,* 14 Cal.App.3d at p. 438), in considering whether to settle for an amount below the excess policy coverage. In fact, the primary reason excess insurance is purchased is to provide an available pool of money in the event that the decision is made to take the gamble of litigating.

With these principles in mind, it becomes clear that the case of *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co., supra,* 70 Cal. App.3d 789, upon which Commercial bases its argument, is easily distinguishable.

In *Liberty,* the insurance policy contained the standard clauses giving the company the right of subrogation against third parties, plus a provision which expressly prohibited the insured from doing anything which would prejudice such right (*id.,* at p. 796). The insured leased the equipment covered in the policy to a third party under a contract which effectively released that party from liability for damage, thus cutting

off the company's right of subrogation. The court held that the recipro-cal covenant of good faith and fair dealing in the insurance policy was breached by the insured, since its act had destroyed "Liberty's expecta-tion of opportunities to subrogate in the event of payment of a loss caused by the negligence of a third party." (P. 797.)

In the instant case, whether Commercial could harbor any legitimate expectation that its insured would settle a claim for less than the threshold amount of the policy coverage must be determined in the light of what the parties bargained for. The complaint makes no reference to any language in the policy which would give rise to such expectation. We must therefore ask the question: Did Safeway, when it purchased excess coverage, impliedly promise that it would take all reasonable steps to settle a claim below the limits of Commercial's coverage so as to protect Commercial from possible exposure? Further, did Commer-cial extend excess coverage with the understanding and expectation that it would receive such favorable treatment from Safeway under the pol-icy? We think not.

At this point, two recent appellate decisions which bear upon this is-sue, deserve mention.

First, in the case of *Kaiser Foundation Hospitals* v. *North Star Re-insurance Corp.* (1979) 90 Cal.App.3d 786 [153 Cal.Rptr. 678], the Court of Appeal for the Second District, Division Five, concluded that the relationship between an insured and primary carrier vis-à-vis the ex-cess carrier was governed by an implied covenant of good faith and fair dealing (p. 792). That decision, however, dealt with a situation where the insured and its primary carrier acted in collusion to wrongfully allo-cate certain dates of loss so as to maximize the liability of the excess carrier. It appears that the aggravated conduct on the part of the in-sured and the primary carrier in taking advantage of the excess carrier prompted the Court of Appeal to invoke the basic principles of good faith and fair dealing in order to give proper redress to the excess car-rier. It is to be noted that the opinion takes careful pains to emphasize that in speaking of a good faith and fair dealing duty owed by the in-sured to the excess carrier under these circumstances, it was expressly not amplifying on the nature of such duty: "[W]e make no attempt to define precisely what rights and duties that entails in a case such as this. Such questions are best decided in the light of concrete facts..." (p. 794).

We acknowledge that equity requires fair dealing between the parties to an insurance contract. We view the *Kaiser* and *Liberty* cases as pointing up a recognition in the law that the insured status as such is not a license for the insured to engage in unconscionable acts which would subvert the legitimate rights and expectations of the excess insurance carrier.

However, we are unable to derive from this sound principle, the precipitous conclusion that the covenant of good faith and fair dealing should be extended to include a *"Comunale* duty"—that is, a duty which would require an insured contemplating settlement to put the excess carrier's financial interests on at least an equal footing with his own. Such a duty cannot reasonably be found from the mere existence of the contractual relationship between insured and excess carrier in the absence of express language in the contract so providing.

We observe that an apparently contrary conclusion has been reached by the Third District in the recent case of *Transit Casualty Co.* v. *Spink Corp.* [] [*supra*] 94 Cal.App.3d 124. [] [We disapprove that case] insofar as it holds that an insured's duty of good faith and fair dealing to his excess carrier compels him to accept a settlement offer or proceed at his peril where there is a substantial likelihood that an adverse judgment will bring excess insurance coverage into play.

■ In conclusion, we hold that a policy providing for excess insurance coverage imposes no implied duty upon the insured to accept a settlement offer which would avoid exposing the insurer to liability. Moreover such a duty cannot be predicated upon an insured's implied covenant of good faith and fair dealing. If an excess carrier wishes to insulate itself from liability for an insured's failure to accept what it deems to be a reasonable settlement offer, it may do so by appropriate language in the policy. We hesitate, however, to read into the policy obligations which are neither sought after nor contemplated by the parties. (End of Court of Appeal opinion.)

The judgment is affirmed.

NEWMAN, J.—I concur in the court's opinion. I believe, though that the aims of California Rules of Court, rule 29(a)(1) would more effectively have been furthered had this matter been handled by depublishing the *Transit Casualty* case (*ante*, see above), 94 Cal.App.3d 124 [156 Cal.Rptr. 360].

**BIRD, C. J.**—I concur in the opinion, but I must respectfully dissent from the form of that opinion for the reasons outlined in my concurring and dissenting opinion in *In re Perrone C.* (1979) *ante*, at page 58 [160 Cal.Rptr. 704, 603 P.2d 1300].