[Civ. No. 67169. Second Dist., Div. Five. Dec. 20, 1983.]

TRAVELERS INSURANCE COMPANY, Plaintiff and Respondent, v. SIERRA PACIFIC AIRLINES et al., Defendants and Appellants.

## Counsel

Kern & Wooley and Ralph S. LaMontagne, Jr., for Defendants and Appellants.

Parker & Dally and Joan E. Partritz, Michael G. Lowe and Hanna, Brophy, MacLean, McAleer & Jensen for Plaintiff and Respondent.

OPINION

**STEPHENS, J.**—This action arises out of the crash of a Sierra Pacific Airlines (hereinafter SPA or appellant) aircraft which occurred in March of 1974. Thirty-six passengers were killed, including one Irene Bunde. At the time of the accident, Ms. Bunde was working in the course and scope of her employment with Wolper Organization, Inc.

Prior to the crash, plaintiff/respondent Travelers issued a policy of workers' compensation insurance to the Wolper Organization.[1] In the instant case, decedent Irene Bunde had no "dependents" at the time of her death. Since Ms. Bunde left no dependents, Travelers was required, pursuant to Labor Code section 4706.5, subdivision (a),[2,3] to pay to the Department of Industrial Relations of the State of California a sum equal to the total dependency death benefit that would have been payable to the decedent's surviving dependent, had such a dependent existed.

Regarding Ms. Bunde's estate, Travelers paid the sum of $37,763.67 to the Department of Industrial Relations.[4]

A complaint for damages was thereafter filed by Travelers on March 6, 1975, seeking recovery of the monies paid out. Based upon stipulated facts and the conceded negligence on the part of SPA, the trial court entered judgment in favor of Travelers. The court concluded that the money paid to the Department of Industrial Relations constituted compensation. SPA thereafter initiated this appeal.

Among the multiple issues presented are (1) whether application of section 3852, as amended in 1970, is to be limited to factual situations involving rights of subrogation; (2) whether payments made to the Department of Industrial Relations, pursuant to section 4706.5, subdivision (a), constitute "compensation" within the meaning of section 3852, as amended in 1970, or in the alternative, does the payment constitute satisfaction of a tax obli-

---

[1]That policy called for Travelers to pay a dependency death benefit to dependents of Wolper employees in the event of work related death.

[2]Unless otherwise indicated, hereinafter all references are to the Labor Code.

[3]Section 4706.5, subdivision (a), states as follows:
"Whenever any fatal injury is suffered by an employee under such circumstances as to entitle the employee to compensation benefits, but for his or her death, and such employee does not leave surviving any person entitled to a dependency death benefit, the employer shall pay a sum to the Department of Industrial Relations equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children."

[4]Travelers was also required to pay $451.38 in burial expenses which it seeks to recover from appellant. Appellant does not contest this claim.

gation; (3) whether it is necessary for a workers' compensation carrier to make payments to "dependents" of a deceased employee in order to be entitled to reimbursement for such payments from a third party tortfeasor pursuant to section 3852, as amended in 1970; (4) whether section 3852, as amended in 1970, imposes double liability on a third party tortfeasor; and (5) whether section 4706.5 violates Equal Protection.

We find appellant's arguments unpersuasive and thus affirm the court's judgment.

I

We begin our discussion by addressing the foundational question of whether section 3852, as amended in 1981, thereby incorporating section 4706.5 (payments made to the Department of Industrial Relations), should apply to this appeal.[5]

During the pendency of this appeal, the Legislature amended section 3852 to read as follows:

"The claim of an employee, for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, or who pays or becomes obligated to pay salary in lieu of compensation *or who pays or becomes obligated to pay an amount to the Department of Industrial Relations pursuant to Section 4706.5,* may likewise make a claim or bring an action against such third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he was liable including all salary, wage, pension, or other emolument paid to the employee or to his dependents." (Italics added.)

By this amendment, the Legislature clearly sought to insure that an employer or insurer (see § 3850) could maintain a claim or right of action against a third party tortfeasor for those payments made pursuant to section 4706.5.

Although the amendment became effective during the pendency of this appeal, Travelers contends that the amendment should be applied retroactively as a result of the following legislative statement of intent:

---

[5]Section 3852 was subsequently amended in 1982 in nonpertinent parts.

"The Legislature finds and declares that the provisions of law set forth in Sections 8, 9 and 10 of this act, which respectively amend Sections 3352 and 3852 of the Labor Code and add Section 3706.5 to the Labor Code, do not constitute a change in, but are declaratory of, the existing law. These provisions shall apply to all claims filed for injuries occurring prior to the effective date of this act." (Stats. 1981, ch. 21, § 12.)

SPA maintains that the declaration of the Legislature cannot change the plain meaning of section 3852 as it read in its 1970 version; that section 3852 as it stands amended or in its former version in fact "bolsters their position"; and that any retrospective application of amended section 3852 would be unconstitutional.

SPA premises these arguments on three theories: (1) that section 3852 does not merely represent a clarification of the former law, but rather represents a clear change in the law making it non-retroactive in its application; (2) that retroactive application would in any event be unconstitutional; and (3) that the section itself, as recently amended or in its former state, is unconstitutional.

We are not persuaded by these arguments and find that section 3852, as amended in 1981, is applicable to the instant case.

■ In construing the applicability of section 3852, it is fundamental that we ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*Sinnamon* v. *McKay* (1983) 142 Cal.App.3d 847, 850 [191 Cal.Rptr. 295]; see also *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Accordingly, we are bound to give that effect to the statute according to the usual, ordinary import of the language employed in framing them looking first to the words of the statute to determine the intent of the Legislature. " ' "If the words . . . are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." [Citations omitted.]' " (*Id.,* 142 Cal.App.3d at p. 851, quoting from *California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at p. 698.)

■ The legislative intent of section 3852, as amended in 1981, is clear. "These provisions shall apply to all claims filed for injuries occurring prior to the effective date of this act." (Assem. Bill No. 44, Stats. 1981, ch. 21, § 12.) The Legislature intended the amended section 3852 to apply "retroactively" as said amendment "[does] not constitute a change in, but [is]

declaratory of, the existing law." (*Ibid.;* see also Legislative History, 44A West's Ann. Cal. Codes (1983 Supp.) foll. § 3352, p. 26.)

SPA suggests that we not "blindly bow to the legislature's stated interpretation" since former section 3852 (as amended in 1976) is unambiguous. The 1981 amendment, it argues, is not declaratory of existing law. SPA cites to the Legislative Counsel's Digest of Assembly Bill No. 44, *supra,* section 4, which states as follows:

"*Existing law* permits any employer who pays or becomes obligated to pay workers' compensation or salary in lieu of compensation, to make a claim or bring an action against a third person for the injury or death to the employee.

"This bill would, *in addition,* permit an employer who pays or becomes obligated to pay an amount to the Department of Industrial Relations when an employee entitled to workers' compensation dies without survivors, to make such claim or bring such action against a third person." (Italics added.)

Those statements located in the Legislative Counsel's Digest are noteworthy, yet less than persuasive when considered in light of the Legislature's own patent action and stated intent. These statements merely represent the Legislature's in-house counsel's impressions of the import of that legislation.

Secondly, the additional language in fact alters nothing. Payments made to the Department of Industrial Relations pursuant to section 4706.5 were already implicitly recoverable under the section as previously written. (*Associated Indemnity Corp.* v. *Pacific Southwest Airlines* (1982) 128 Cal.App.3d 898, 908 [180 Cal.Rptr. 685].) The "addition" merely clarifies what actions were possible under that statute to avoid any ambiguity. (See *ibid.;* cf. Assem. Bill No. 44, *supra,* § 13.)

As a result, not only is section 3852, as it stands amended, presently applicable in the instant matter, its application in the instant case is not unconstitutional. The Legislature, in its attempt to prevent confusion, stated that the amended statute would apply to injuries occurring *prior* to the effective date of the act. Though couched in terms of "retroactivity," the statute is in effect administered as if never amended since there has been no "change" in the statute itself.

Finding, as we have, that section 3852, as amended in 1981, is applicable to the instant case, we now address appellant's contention that

Travelers has no right to recover under the terms of that section. SPA insists that section 3852 is simply a recognition of the doctrine of equitable subrogation and is not an indemnity statute. ■ ■ ■ ■ The argument continues that this conclusion follows, since section 3852 deals with the doctrine of equitable subrogation,[6] and Travelers cannot stand in the shoes of a subrogee because its payments were not made to an "injured person," but rather were made to the Department of Industrial Relations.

■ As noted earlier, section 3852 entitles an employer or insurance carrier who pays or becomes obligated to pay workers' compensation or salary in lieu of compensation to bring an action against the tortfeasor for recovery of those funds paid out as a proximate result of the injury or death to the employee. (*Breese* v. *Price* (1981) 29 Cal.3d 923, 928 [176 Cal.Rptr. 791, 633 P.2d 987].)

Is section 3852 limited to principles of equitable subrogation and must payments be made to an injured person? *Associated Indemnity Corp.* v. *Pacific Southwest Airlines, supra,* 128 Cal.App.3d at pages 905-907 addressed this very issue. In *Associated,* certain passengers, who were working within the scope of their employment, were killed when a PSA aircraft crashed. The decedents left no dependents and Associated Indemnity Corp., one of two workers' compensation carriers, sued PSA to recover those funds paid out to the state pursuant to section 4706.5, subdivision (a), in lieu of benefits to have been paid to surviving dependents. The trial court granted PSA's motion for partial summary judgment and found that such a right of reimbursement under section 3852 did not exist. The Fourth District reversed, concluding that Associated did have a right of reimbursement under section 3852.

Citing *State Comp. Ins. Fund* v. *Williams* (1974) 38 Cal.App.3d 218, 222 [112 Cal.Rptr. 226], the court in *Associated* at page 907 of 128 Cal.App.3d concluded that section 3852 was not only a subrogation statute, but also an indemnification statute in that limited instance. Thus, Associated Indemnity Corp. was provided the right to recover monies expended to the state as a proximate result of PSA's tort.

---

[6]"Equitable subrogation is a legal device which permits a party who has been required to satisfy a loss created by a third party's wrong to step into the shoes of the loser and recover from the wrongdoer." (*Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal.App.3d 124, 132 [156 Cal.Rptr. 360]; disapproved on other grounds; see *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 921 [164 Cal.Rptr. 709, 610 P.2d 1038].)

SPA contends the court in *Associated* erroneously decided same and should not be controlling since the *Williams* case, relied upon by the court in reaching its decision, is disapproved authority.[7]

The court's reliance on *Williams* certainly undermines its analysis. Yet, such reliance did not fatally inhibit an otherwise correct and equitable result reached.

Under *Williams,* an employer's action pursuant to section 3852 was considered a separate action from that of the employee's action. The *Williams* court also determined that section 3852 created a new cause of action unknown at common law and entirely separate from the injured employee's common law right of action for damages, and that the section was essentially a statutory action for indemnity. (*State Comp. Ins. Fund* v. *Williams, supra,* 38 Cal.App.3d at p. 222.) This approach, however, is inconsistent with the Supreme Court's interpretation of section 3852.

In *Breese* v. *Price, supra,* 29 Cal.3d at page 928, the Supreme Court stated that "it would be anomalous for an employer or insurer to recover damages greater, in nature or amount, than those afforded the injured employee."

"*Breese* expressly disapproves the rationale of *Williams* . . . and several recent cases recognize the Supreme Court requires employer suits under section 3852 to be treated as derivative rather than independent [citations]." (*Hubbard* v. *Boelt* (1983) 140 Cal.App.3d 882, 884 [190 Cal.Rptr. 15].)

"The Supreme Court has also reaffirmed its statement in *Sanfax* 'that "in granting employers the right to sue third parties, the Legislature simply gave statutory recognition to principles of equitable subrogation."'" (*Ibid.,* quoting from *Breese* v. *Price, supra,* 29 Cal.3d at p. 929; *County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d at p. 876, fn. 7.)

Consequently, an insurance company must prove that the "defendant's negligence is the proximate cause of an employee's injuries and the amount of tort damages reasonably resulting therefrom." (*Breese* v. *Price, supra,* 29 Cal.3d at p. 931.) Otherwise, the court observed that no valid public

---

[7]*Williams* has been both explicitly and implicitly disapproved in *Breese* v. *Price, supra,* 29 Cal.3d at page 931; *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 876, footnote 7 [140 Cal.Rptr. 638, 568 P.2d 363]; and *Mendenhall* v. *Curtis* (1980) 102 Cal.App.3d 786, 793 [162 Cal.Rptr. 569]. Contrary to SPA's argument, however, the court in *Associated* did recognize same. (See *Associated Indemnity Corp.* v. *Pacific Southwest Airlines, supra,* 128 Cal.App.3d at pp. 905, 906, fn. 7.)

policy would be served by taking away an insurer's incentive to dispute questionable claims. If an insurer had a guarantee of automatic reimbursement, frivolous claims would not be discovered. The burden of proof for reimbursement, therefore, has been placed upon the insurer. (Sorenson et al., *The California Supreme Court Survey: A Review of Decision; July 1981-December 1981* (1982) 9 Pepperdine L.Rev. 939, 1066.)

*Williams* remains disapproved authority where it declares that payments made pursuant to workers' compensation proceedings are *conclusively* established as proximately resulting from the tortfeasor's conduct and therefore *automatically* recoverable against the tortfeasor. However, the inclusion of section 4706.5 into section 3852 somewhat revitalizes, albeit limited to situations where payments are made pursuant to section 4706.5, the conclusion that section 3852 not only gives "statutory recognition to principles of equitable subrogation" (*Breese* v. *Price, supra,* 29 Cal.3d at p. 929), but also a limited right of indemnity. (*State Comp. Ins. Fund* v. *Williams, supra,* 38 Cal.App.3d at p. 222; *Associated Indemnity Corp.* v. *Pacific Southwest Airlines, supra,* 128 Cal.App.3d at p. 907.) Such a determination no longer conflicts with the judicial recognition of section 3852 as exclusively limited to principles of equitable subrogation. Indeed, *Breese* as well as *Sanfax* were adjudicated without mention to the Legislature's 1981 incorporation of section 4706.5 into section 3852. Accordingly, section 3852, as amended in 1981, does provide an action for indemnity under the facts of this case.

In any event, and in conformity with the requirements of proven liability as set forth in *Breese,* there is admitted liability on the part of SPA, as well as established damages (the monies paid to the Department of Industrial Relations) in the present case. Therefore, the requirements of *Breese* have been duly satisfied and Travelers has met its burden. The "damages" awarded pursuant to section 4706.5 in this instance were sustained as the proximate result of SPA's tortious conduct.

## II

Next, SPA alleges that for Travelers to recover under section 3852, it must have made a payment of "compensation." In pertinent part, section 3852 states that "Any employer who pays, or becomes obligated to pay *compensation, . . .* or who pays, or becomes obligated to pay an amount to the Department of Industrial Relations pursuant to Section 4706.5, may likewise make a claim or bring an action against such third person." (Italics added.)

Travelers' payments, it is argued, are not "compensation" within the meaning of section 3852 and, therefore, the employer may not recover those payments.

First, section 3852, as it reads in its amended form, allows any employer the right to bring a claim or action if the employer pays *"an amount* to the Department of Industrial Relations pursuant to section 4706.5." (Italics added.) The language of section 3852 is explicitly clear. By legislative designation, the inclusion of section 4706.5 into section 3852, in this limited instance, clarified the expansive meaning originally intended of the definition of "compensation."

■  The Legislature has provided employers (and their compensation carriers) with a viable third party remedy in cases of *fatal* injuries to employees. The scheme created by section 3852 is to hold the third party tortfeasor liable for all consequences of his acts. Any amount which the employers or their insurer is obligated to pay, including those payments made to the state under section 4706.5, subdivision (a), is inclusive of the overall scheme. (*Associated Indemnity Corp.* v. *Pacific Southwest Airlines, supra,* 128 Cal.App.3d at p. 905.) Travelers' payment to the state was "an amount."

■  Even assuming that we interpret section 3852[8] as it read in its 1970 amended version, the Travelers payment to the state would fit the definition of "compensation." The General Provisions Chapter (ch. 1) of part 1 of the Workers' Compensation Insurance Division (div. 4) of the Labor Code defines "compensation" as follows:

"'Compensation' means compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation, or in the event of his death, upon his dependents, without regard to negligence." (§ 3207.)

According to SPA, it is unassailably clear that payments for which Travelers seeks reimbursement were not made to an "injured employee" or "his dependents," but were, rather, made to the State of California.

In *Associated Indemnity Corp.* v. *Pacific Southwest Airlines, supra,* 128 Cal.App.3d at page 905, the Fourth District held that the fact that the state

---

[8]The majority of SPA's argument is based upon its assumption that section 3852, as it read before its incorporation of section 4706.5, is applicable. As discussed earlier, such is not the case.

was the eventual recipient of the decedent's death benefits was of no consequence since the word "includes" as found in section 3207 constituted a word of enlargement for purposes of defining "compensation." Accordingly, when "[b]oiled down to its essentials, [§ 3207] simply says compensation means compensation under division 4." (*Id.*, at p. 903.)

SPA urges that acceptance of the *Associated* court's interpretation of section 3207 not only renders everything after the word "includes" surplusage, but renders the entire statute virtually meaningless. "The fact that 'compensation' means 'compensation' is of very little assistance and the fact that Division 4 is involved is self-evident without the statute because Division 4 is the only division of the Labor Code which deals with workers' compensation. [¶] The conclusion is, thus, inescapable that the language following the word 'includes' is necessary in order to give proper effect to Labor Code section 3207, and that, accordingly, no payment can properly be categorized as 'compensation' unless such payment is made to an 'injured employee' or 'dependent.'"

Section 5001, which is located in division 4 but deals exclusively with compromise and release, was relied upon by the court in *Associated*. It states that, "Compensation is the measure of the responsibility which the employer has assumed for injuries or deaths which occur to employees in his employment when subject to this division. No release of liability or compromise agreement is valid unless it is approved by the appeals board or referee."

SPA maintains that since section 5001 deals solely with compromise and release and is located in chapter 2 of part 3 of the workers' compensation section of the Labor Code, whereas section 3852 is found in part 1, its definition of compensation cannot be applicable to section 3852. Reliance upon such a conclusion is founded on SPA's interpretation of section 3204.

Section 3204 states as follows: "Unless the context otherwise requires, *the definitions hereinafter set forth in this chapter* shall govern the construction and meaning of the terms and phrases used in this division." (Italics added.) Section 3204 clearly is inapposite with SPA's intended interpretation.

Section 5001 is located in division 4 and is applicable since "the context otherwise requires." In any event, contrary to SPA's contention, "compensation," as defined in section 5001, is not inconsistent or in conflict with "compensation," as defined in section 3207.

Section 5001 considers the measure of responsibility which an employer assumes in the event of a work related injury or death of an employee. Section 3207 concerns the benefits or payments to be conferred upon an injured or deceased employee pursuant to division 4. When considered in light of the liberal construction extending benefits to injured (and deceased) workers as well as the extension of such construction to the complete workers' compensation system (§§ 3201, 3202), it is apparent that the two definitions of "compensation" are harmonious with the overall legislative intent of the workers' compensation system.

Lastly, we note what must be construed as an implied concession by SPA that payments made under this section are compensation. In cases such as the present, where a fatally injured employee leaves no dependents for purposes of awarding death benefits, it then becomes the appeal board's responsibility to issue its award requiring the employer, or its compensation carrier, to make one or both of two types of payments: (1) Payment of burial expense under the provisions of section 4701, subdivision (a), to the employee's estate administrator, or other persons entitled to it; and/or (2) payment of a non-dependency death benefit to the Department of Industrial Relations for the benefit of the Subsequent Injuries Fund under the provisions set forth in section 4706.5.

SPA here does not contest Travelers' right to recover the burial expenses of $451.38 paid out. In so doing, it concedes that this type of payment represents compensation or, at the very least, an amount. As payments of burial expenses under section 4701, subdivision (a), are "compensation" for purposes of recovery under section 3852, then so too are payments of non-dependency death benefits to the Department of Industrial Relations. All semantics aside, the payment of an amount to the Department of Industrial Relations is compensation.[9]

## III

We next address the contention that section 4706.5 payments constitute the satisfaction of a tax obligation rather than compensation, and that by allowing Travelers a recovery, exposes SPA to double liability.

It is submitted that, rather than being in the nature of compensation, section 4706.5 payments constitute nothing more than satisfaction of a tax

---

[9]Commensurate with this conclusion, the answer to appellant's argument that payments must have been made to "dependents" is obvious. The incorporation of section 4706.5 into section 3852 legislatively designates the state, in this limited instance, as the decedent's "dependent."

obligation. Such a determination, SPA concludes, is supported by the case of *Yosemite L. Co.* v. *Industrial Acc. Com.* (1922) 187 Cal. 774 [204 P. 226, 20 A.L.R. 994].

In *Yosemite,* the Supreme Court considered a statute very similar to section 4706.5. Said statute provided that in the event of the occurrence of death of an employee who left no dependents, his employer was required to pay the sum of $350 to the state treasurer. Money raised through this statutory provision was to be used to help finance the Industrial Rehabilitation Fund. The rehabilitation fund was to be used, among other things, " 'for the promotion of vocational re-education and rehabilitation of persons disabled in industry in this state' . . . ; that the remainder of the fund which may be left after the commission shall have used so much thereof as they deem best in such promotion shall be placed 'semi-annually, to the credit of the accident prevention fund, established by said compensation act.' " (*Id.,* at p. 776.)

In deciding whether or not said act gave the Industrial Accident Commission jurisdiction to adjudicate the liability of the employer to the state, our Supreme Court concluded that the $350 charge levied against an employer was a tax. (*Id.,* at p. 783.) The court found that section 21 of article XX of the California Constitution, as amended in 1918, did not authorize the Legislature to impose a liability on an employer to pay money to the state as was specified by the Workmen's Compensation Insurance and Safety Act of 1919. Consequently, it followed that the Industrial Accident Commission lacked jurisdiction to determine any dispute that arose concerning the liability of employers sought to be imposed by said Act of 1919. (*Ibid.*)

For purposes of recovery pursuant to section 3852, the question of whether payments made pursuant to section 4706.5 are a tax or an award is immaterial since section 3852 allows for recovery for one "who pays or becomes obligated to pay *an amount* to the Department of Industrial Relations . . . ." (Italics added.) The question presented, however, does raise an important constitutional issue to be addressed subsequently.

Concerning SPA's contention that section 4706.5 imposes upon it double liability, section 4706.5 does not open the door to double liability in this case. SPA argues that it is possible that a particular individual fails to meet the dependency requirement to collect death benefits under the workers' compensation law, but does qualify as an "heir" under Code of Civil Procedure section 377. Thus, the possibility of double liability, SPA argues, exists. The primary flaw in SPA's rationale, however, is in the implied conclusion that an "heir," seeking compensation for the wrongful death of

a deceased employee, would be seeking compensation for injuries suffered by that employee and not for the heir's own injuries. This would not be the case.

■ Under Code of Civil Procedure section 377, an action for wrongful death is *original* rather than derivative in nature. Consequently, said cause of action, while triggered by the decedent's death, is in no way a claim derived from the decedent, via the survival of a claim the decedent may have had. (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 831 [174 Cal.Rptr. 348]; *State Farm Mutual Automobile Ins. Co.* v. *Skol*\* (Cal.App.) Section 3852 would, therefore, not open the door to double liability in this case since a claim by way of Code of Civil Procedure section 377 is independent of an action for recovery of funds paid out under section 3852.

## IV

SPA next contends that section 4706.5 violates equal protection and due process. SPA also argues that section 3852 is unconstitutional. We reject such an argument.

■ "The first and minimal requirement of equal protection of the law is that persons similarly situated must receive like treatment under the law." (*In re Robert D.* (1979) 95 Cal.App.3d 767, 774 [157 Cal.Rptr. 339].)

■ In the present context, it is argued that section 4706.5 does nothing more than impose a tax upon the employer or his insurance carrier where a particular employee dies without leaving dependents. Consequently, if Travelers is allowed to use section 3852, neither the employer nor Travelers will bear the ultimate burden of the tax; rather, such burden will be borne by the third party tortfeasor (SPA). Therefore, the unwarranted classification allegedly set up is that a third party tortfeasor (SPA), whose victim dies *with* dependents, is not responsible for payment of the section 4706.5 "tax," but a third party tortfeasor, whose victim dies without such dependents, must pay the "tax."

Whatever one labels the payment made to the state, it is the same payment that must be paid by law should an employee's dependent survive to collect. Only the recipients are different. In this instance, the Legislature has artificially designated the state to be an employee's dependent.

■ "A statute violates the equal protection clause if it selects one particular class of persons for a species of taxation and *no rational basis sup-*

---

\*Reporter's Note: Ordered unpublished by Supreme Court, February 23, 1984.

*ports such classification.* " (Italics added.) (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372, 379 [103 Cal.Rptr. 215].) "[T]he Constitution does not require uniform treatment, but only a reasonable basis for legislative classification." (*Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 231 [111 Cal.Rptr. 398]; *Bilyeu* v. *State Employees' Retirement System* (1962) 58 Cal.2d 618, 623 [24 Cal.Rptr. 562, 375 P.2d 442].) A rational basis does support this classification. There is no equal protection violation.

■ Regarding SPA's allegation that the legislation denies it due process, application of section 4706.5 as incorporated in section 3852 is not arbitrarily applied. It is not arbitrary, unreasonable or capricious to hold a party responsible for its tortious acts. The party defendants have the right to deny negligence and demonstrate that no liability should be imposed. (See *Breese* v. *Price, supra,* 29 Cal.3d at p. 931.)

While it is true that early legislative attempts to provide for escheat to the state have been struck down by the courts (see *Yosemite L. Co.* v. *Industrial Acc. Com., supra,* 187 Cal. 774; *Commercial Cas. Ins. Co.* v. *Indus. Acc. Com.* (1930) 211 Cal. 210 [295 P. 11]), the unconstitutionality was the result of the Legislature's failure to provide the proper enabling provisions. That problem was rectified in 1972 by amending the California Constitution thereby adding article XX, section 21 (now art. XIV, § 4). (*Travelers Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 244, 248 [187 Cal.Rptr. 838].)

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.