[No. C034569. Third Dist. Aug. 4, 2004.]

FREMONT COMPENSATION INSURANCE COMPANY, Plaintiff and Appellant, v.
SIERRA PINE, LTD., et al., Defendants and Respondents.

COUNSEL

Laughlin, Falbo, Levy & Moresi and James B. Knezovich for Plaintiff and Appellant.

Porter, Scott, Weiberg & Delehant, Anthony S. Warburg and Jack C. Woodside for Defendants and Respondents.

OPINION

**MORRISON, J.**—The Workers' Compensation Appeals Board (Board) ordered an insurance carrier to pay death benefits to the former wife of an employee killed on the job. The carrier sued alleged third party tortfeasors to recoup the money. Labor Code section 3852 (further unspecified references are to this code) allows a carrier to "bring an action against" third parties. However, the trial court ruled that section 3852 subrogated the carrier to the rights of the former wife, and because she had no standing to sue *for wrongful death*, the carrier had no right to sue *to recoup compensation benefits*. The trial court sustained a demurrer without leave to amend and the carrier timely appealed from the judgment.

■ Section 3852 gives the carrier standing to sue third party tortfeasors. Because the carrier could have sued to recoup benefits paid to the worker while alive, and a statute (§ 3851) provides that a recoupment action survives the death of the worker, the fact the compensation paid was a death benefit, rather than for example, vocational rehabilitation or medical benefits, makes no difference. As we will explain, to allow tortfeasors to escape liability due to the happenstance that the Board ordered benefits to be paid to someone who had no standing to file a *wrongful death* action would conflict with the letter and spirit of section 3852. We reverse with directions.

### STANDARD OF REVIEW

■ For purposes of this appeal we must accept as true the facts alleged in the complaint, construed in favor of the pleader, and determine whether those allegations state a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### FACTUAL AND PROCEDURAL BACKGROUND

Fremont Compensation Insurance Company (Fremont) alleged that Fred Manning, an employee of its insured, was killed while working because of the tortious conduct of defendants Loren Hill, Sierra Pine, Ltd., and Ampine.

Cynthia Nesmith, Manning's former wife, was still a member of Manning's household. Fremont paid Nesmith $125,000 in death benefits pursuant to a Board order, and is obligated for other amounts, such as burial expenses.

■ Although Fremont did not plead Nesmith's divorce from Manning, the fact has been conceded. (See *County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 77 [38 Cal.Rptr.2d 908].) We digress to explain the Board's order. When a worker dies in an industrial accident, the Board may award death benefits. (§ 4700 et seq.) These benefits are paid to: (1) the worker's heirs, if any; or (2) the worker's dependents, if any; or (3) to a state escheat fund. (§ 4706.5.) It seems Manning had no heirs. Some people are presumed to be the worker's dependents; others must show actual dependency. (§§ 3501–3503.) Early cases allowed recovery by persons who in good faith thought they were married to the worker. (*Rivieccio v. Bothan* (1946) 27 Cal.2d 621, 626 [165 P.2d 677]; *Brennfleck v. Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 666, 671–672, 674–675 [84 Cal.Rptr. 50].) Later cases extended recovery to other surviving dependent partners. (*Department of Industrial Relations v. Workers' Comp. Appeals Bd.* (1979) 94 Cal.App.3d 72, 76–78 [156 Cal.Rptr. 183]; see 1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2002) § 7.4, p. 410.) Nesmith's marital status is a red herring because Nesmith, as a member of Manning's household (see Lab. Code, § 3503), was his actual dependent and would have been entitled to benefits even had they never been married.

After paying Nesmith, Fremont sued and defendants demurred to Fremont's amended complaint. They argued that because Nesmith was not Manning's surviving spouse or putative spouse, *Nesmith* had no standing to sue for Manning's death. (Code Civ. Proc., § 377.60, subd. (a); *Villacampa v. Russell* (1986) 178 Cal.App.3d 906, 908–910 [224 Cal.Rptr. 73].) Defendants then argued that Fremont's payment made it Nesmith's *subrogee*. Because a subrogee stands in the shoes of the subrogor, they argued Fremont had no standing to sue to recoup the benefits. The trial court sustained the demurrer without leave to amend.

## DISCUSSION

The critical statute is section 3852, but we first describe its context within the Legislature's comprehensive compensation system. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] [statutes must be construed in context of statutory scheme].)

In 1911, a voluntary employer's liability law was enacted, "whereby the risk of the employment shall be placed not upon the employee alone, but upon the employment itself." (Governor Hiram Johnson's First Inaugural

Address, 1911, see www.governor.ca.gov and links.) The California Constitution was also amended that year to allow for a compulsory system and in 1913, such a system was enacted. The current workers' compensation system is structurally the same as an act passed in 1917 and codified into the new Labor Code in 1937.

■ The policy is that workers do not have to prove fault, adjudication is swift, but the benefits are smaller than might be obtained as tort damages. (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728–734 [100 Cal.Rptr. 301, 493 P.2d 1165]; *Boehm & Associates v. Workers' Comp. Appeals Bd.* (2003) 108 Cal.App.4th 137, 142 [133 Cal.Rptr.2d 396]; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, §§ 1–5, pp. 560–565; Hichborn, Story of the Cal. Legislature of 1911, pp. 236–245; Hichborn, Story of the Cal. Legislature of 1913, pp. 346–347.) The law: (1) spreads the cost of industrial injuries to goods and services; (2) provides prompt, limited compensation to injured workers, regardless of fault; (3) increases industrial safety; and (4) insulates employers from tort liability. (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 697 [21 Cal.Rptr.2d 72, 854 P.2d 721].)

■ Private employers may create a self-insurance plan, but most buy insurance. (2 Witkin, Summary of Cal. Law, *supra*, Workers' Compensation, § 134, p. 706.) Then the carrier assumes liability and is "subrogated to all rights of the employer arising out of assumption of liability or payment of compensation." (*Id.*, § 137, p. 708; see Ins. Code 11662; *Employers Mutual Liability Ins. Co. v. Tutor-Saliba Corp.* (1998) 17 Cal.4th 632, 638–639 [71 Cal. Rtpr. 2d 851, 951 P.2d 420] (*Employers Mutual*).) The "employer is subrogated to the personal injury claim of the employee against the third party. Therefore, the employer's insurer is also so subrogated when it stands in the shoes of the employer. The insurer is also, however, subrogated to the employer's additional rights and liabilities against the third party. *For example, while the employee has no claim for reimbursement of workers' compensation benefits against the third party, the employer, and therefore its insurer, does.*" (*Employers Mutual, supra*, 17 Cal.4th at p. 639, italics added.)

■ As the italicized passage just quoted indicates, one way to reduce the insurance burden on employers is to allow employers and their insurers to pursue third parties who kill or injure workers and thereby cause the payment of benefits. In contrast, a wrongful death suit is based on a new cause of action which recompenses heirs for their pecuniary losses, and is not a survival of whatever cause of action the decedent may have had for injuries. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283 [87 Cal.Rptr.2d 222, 980 P.2d 927]; see *Travelers Ins. Co. v. Sierra Pacific Airlines* (1983) 149 Cal.App.3d 1144, 1159 [197 Cal.Rptr. 416] (*Travelers*) [wrongful death claim

"independent of an action for recovery of funds paid out under section 3852"]; see *Smith v. County of Los Angeles* (1969) 276 Cal.App.2d 156, 164 [81 Cal.Rptr. 120] (*Smith*).)

The carrier may choose how to try to recoup payments it has made. It may: (1) intervene in an injured worker's action, (2) file an independent action, or (3) assert a lien in an injured worker's action. (§§ 3852, 3853, 3856; see *Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 739, fn. 3 [78 Cal.Rptr.2d 250] (*Gapusan*); *O'Dell v. Freightliner Corp.* (1992) 10 Cal.App.4th 645, 653 [12 Cal.Rptr.2d 774] (*O'Dell*); 16 Couch on Insurance (3d ed. 2000) § 225:152.) This ensures the employee does not get a double recovery, the third party does not have to defend two lawsuits, and compensation insurance rates are minimized. (*O'Dell, supra,* 10 Cal.App.4th at p. 653; *Abdala v. Aziz* (1992) 3 Cal.App.4th 369, 376–377 [4 Cal.Rptr.2d 130] (*Abdala*).)

■ Section 3852 now provides in part: "The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against [third parties]. Any employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay [the state pursuant to section 4706.5, where the employee has no dependents], may likewise make a claim or bring an action against the third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee or to his or her dependents. The respective rights against the third person of the heirs of an employee [suing for wrongful death], and an employer claiming pursuant to this section, shall be determined by the court." "Employer" includes the insurance carrier. (§ 3850, subd. (b).) ■ A death benefit is compensation. (§ 3207; *Travelers, supra,* 149 Cal.App.3d at p. 1155.)

■ The statute first states an employee does not lose the right to sue third parties by applying for benefits. Had Manning survived he could have sued defendants for injuries and Fremont could have joined his suit. Since Manning died, his heirs, if any, could have sued defendants *for wrongful death.* (See Code Civ. Proc., § 377.60.) The last sentence of section 3852 allows a court to apportion damages between the employer (or insurer) who has paid compensation benefits, and the heirs who sue for their wrongful death damages. This establishes that an employer (or insurer) is not limited to recovery for payments due to injuries. "[A]n employer claiming pursuant to this section" (§ 3852) is *not* pursuing a wrongful death recovery. (*Eli v. Travelers Indemnity Co.* (1987) 190 Cal.App.3d 901, 904, fn. 2, 905 [235 Cal.Rptr. 704, 235 Cal.Rptr. 901] ["two wholly distinct and independent causes of action"].)

■ The heart of the statute provides that where the carrier "pays, or becomes obligated to pay compensation," it "may *likewise* make a claim or bring an action against the third person." (§ 3852, italics added.) In that action, "*the employer [or carrier] may recover . . .* in addition to the total amount of compensation, damages for which he or she was liable including *all salary, wage, pension, or other emolument paid to the employee or to his or her dependents.*" (*Ibid.*, italics added.) A plain reading of this statute indicates that because Fremont paid death benefits to Manning's dependent, it "may likewise . . . bring an action against the third person" to recover those benefits. (§ 3852.)

To repeat, Manning could have sued defendants for his injuries had he lived. If for some reason he chose not to sue them, Fremont "likewise" could have sued defendants to recoup its payments. Section 3851 provides, "The death of the employee[,] or of any other person, does not abate any right of action established by this chapter." Equivalent language has been in the compensation statutes for a long time. (See Stats. 1919, ch. 471, § 8, p. 920.) This is a legislative abrogation of the common law rules regarding the deaths of parties, and provides for *survivorship* of Fremont's right to sue, notwithstanding Manning's death. (See *Garofalo v. Princess Cruises, Inc.* (2000) 85 Cal.App.4th 1060, 1070 [102 Cal.Rptr.2d 754] (*Garofalo*).)

Therefore, we conclude Fremont's standing comes from section 3852, and the wrongful death statute, with its limited standing provisions, is irrelevant. This application of plain statutory meaning, given the comprehensive scheme of which section 3852 is a part, should have resolved the demurrer in Fremont's favor.

Defendants, relying on snippets of California Supreme Court cases, convinced the trial court that section 3852 did no more than codify equitable subrogation principles. Once the trial court accepted that theory, it had to conclude that Fremont in effect bought *Nesmith's rights* to sue defendants by paying her death benefits, and further conclude that because she had no right to sue defendants, neither did Fremont. We agree section 3852 partly codifies subrogation law and that Nesmith could not sue defendants. Otherwise, we disagree.

■ As the California Supreme Court passage quoted above makes clear, the employer is subrogated to the employee's rights and the carrier is subrogated to the employer's rights *and also* "to the employer's additional rights and liabilities against the third party. For example, while the employee has no claim for reimbursement of workers' compensation benefits against the third party, the employer, and therefore its insurer, does." (*Employers Mutual, supra,* 17 Cal.4th at p. 639.)

We acknowledge defendants' point that, although the statute no longer speaks in terms of subrogation as an earlier version did (Stats. 1913, ch. 176, § 31, p. 295; see *Insurance Co. v. Terminal Rys.* (1919) 39 Cal.App. 388, 391 [178 P. 974]), the current statute and its predecessors have been characterized as codifying principles of equitable subrogation, rather than indemnity. But these characterizations generally responded to claims that section 3852 created a source of *substantive liability.* (E.g., *County of San Diego v. Sanfax Corp.* (1977) 19 Cal.3d 862, 873–874 [140 Cal.Rptr. 638, 568 P.2d 363] (*Sanfax*).) The treatises view it as "a statutory right to indemnity that is, to some extent, subject to principles of equitable subrogation." (Peyrat, Cal. Workers' Damages Practice (Cont.Ed.Bar 2d ed. 2001) Employers' Reimbursement Claims, § 7.3 (Peyrat); see 2 Witkin, Summary of Cal. Law, *supra*, Workers' Compensation, § 66, p. 624 et seq.; Herlick, Cal. Workers' Comp. Law (6th ed. 2001) §§ 12.01[1], 12.05[1], 12.09[3].)

█ As we have explained before, "Equitable subrogation is a legal device which permits a party who has been required to satisfy a loss created by a third party's wrong to step into the shoes of the loser and recover from the wrongdoer." (*Transit Casualty Co. v. Spink Corp.* (1979) 94 Cal.App.3d 124, 132 [156 Cal.Rptr. 360], disapproved on other grounds in *Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 921 [164 Cal.Rptr. 709, 610 P.2d 1038].) Because the subrogee steps into the shoes of the subrogor, the third party has all defenses against the subrogee that it would have had against the subrogor. (See *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291 [77 Cal.Rptr.2d 296]; *Travelers*, *supra*, 149 Cal.App.3d at p. 1152, fn. 6.) In contrast, indemnity "is a right which inures to a person who, without active fault on their part, has been compelled by reason of some legal obligation to pay money due to the initial negligence of another." (*Associated Indemnity Corp. v. Pacific Southwest Airlines* (1982) 128 Cal.App.3d 898, 906 [180 Cal.Rptr. 685].) An indemnitee does not step into the indemnitor's shoes.

It is true that some California Supreme Court cases recite that section 3852 "simply" (*Sanfax*, *supra*, 19 Cal.3d at p. 876, fn. 7, quoted in *Employers Mutual*, *supra*, 17 Cal.4th at p. 637, 71 Cal.Rptr.2d 851, 951,P.2d 420) or "merely" (*Western States etc. Co. v. Bayside L. Co.* (1920) 182 Cal. 140, 148 [187 P. 735], quoted in *De Cruz v. Reid* (1968) 69 Cal.2d 217, 222 [70 Cal.Rptr. 550, 444 P.2d 342]) reflects subrogation principles. But the generality that the Labor Code models common law subrogation principles does not warrant disregarding the explicit terms of the statutory scheme. Not one of the California Supreme Court cases in which such language appears dealt with the issue involved here, explicitly or by necessary implication. "Cases are not authority for propositions not considered." (*In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553].)

Some Court of Appeal cases had misconstrued section 3852 to provide generally for *indemnity* rather than *subrogation*. (See, e.g., *State Comp. Ins. Fund v. Williams* (1974) 38 Cal.App.3d 218, 222 [112 Cal.Rptr. 226] (*Williams*).) *Breese v. Price* (1981) 29 Cal.3d 923 [176 Cal.Rptr. 791, 633 P.2d 987] (*Breese*), rejected the view that section 3852 provided a general indemnity right. (See *Hubbard v. Boelt* (1983) 140 Cal.App.3d 882, 884–885 [190 Cal.Rptr. 15] (*Hubbard*) ["*Breese* expressly disapproves the rationale of *Williams* . . . and several recent cases recognize the Supreme Court requires employer suits under section 3852 to be treated as derivative rather than independent"]; *Mendenhall v. Curtis* (1980) 102 Cal.App.3d 786, 793 [162 Cal.Rptr. 569] [pre-*Breese* case rejecting *Williams*].) However, *Breese* arose in a specific factual context and its rejection of the view that section 3852 was a general indemnity statute was not a holding that it *only* codified subrogation principles. *Breese* involved a possibly collusive settlement of the compensation claim (see *Breese, supra*, 29 Cal.3d at pp. 926, 931), after which the carrier tried to prevent the alleged third party—who had had no notice of the compensation proceeding—from litigating the amount of damages. The court held that the carrier in such a case must still show the amount of damages proximately caused by the negligence of the third party, explaining that the statutes are essentially procedural and do not define the substantive law to govern the tort action. (*Id.* at pp. 928–931.) In this context the court stated that section 3852 "does not enlarge the tort remedy of a compensation carrier beyond that of the injured employee," and later quoted the generality that section 3852 " 'simply' " codifies subrogation principles. (29 Cal.3d at pp. 928–929.) However, the statutory scheme, and the more specific (and more recent) California Supreme Court passage we have quoted (*Employers Mutual, supra*, 17 Cal.4th at p. 639) indicates these statements did not set forth a complete definition of section 3852.

In sum, the California Supreme Court has not held that section 3852 does *no more* than codify common law subrogation. The referenced generalities in the other cases (and, indeed, the generality quoted in *Employers Mutual* itself, *Employers Mutual, supra*, 17 Cal.4th at p. 637) do not allow us to warp the language of the relevant Labor Code statutes to fit into common law pigeonholes. (*Gapusan, supra*, 66 Cal.App.4th at pp. 740–741 [rejecting claim that Labor Code subrogation statutes must be treated as coextensive with common law].) Instead of viewing 3852 through a common law lens, we should view it in harmony with the statutory scheme of which it is a part, as we stated at the outset. (See *Travelers, supra*, 149 Cal.App.3d at p. 1150.)

█ Our interpretation is consistent with *Travelers, supra*, 149 Cal.App.3d 1144. There, death benefits were paid to the state fund for lack of heirs or dependents. The court held (at page 1155): "*The scheme created by section 3852 is to hold the third party tortfeasor liable for all consequences of his acts.* Any amount which the employers or their insurer is obligated to

pay, including those payments made to the state under section 4706.5, subdivision (a), is inclusive of the overall scheme." (Italics added.) This passage is consistent with the goal allowing carriers to recoup benefits paid due to the negligence of third parties. *Travelers* also pointed out that reimbursement to the carrier in escheat cases cannot be explained by subrogation, since the state, the recipient of the death benefit, has no cause of action for wrongful death. (149 Cal.App.3d at p. 1154.) Defendant's interpretation of the statute would lead to an absurd result, which courts strive to avoid. (*People v. Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].)

■ For example, in section 3852 actions the employer stands in the shoes *of the injured employee.* (*Garofalo, supra,* 85 Cal.App.4th at pp. 1070, 1077; see *Demkowski v. Lee* (1991) 233 Cal.App.3d 1251, 1258 [284 Cal.Rptr. 919]; Peyrat, *supra,* § 7.3, p. 228; *Hubbard, supra,* 140 Cal.App.3d at p. 884.) The Board had to adjudicate disposition of death benefits arising out of *Manning's* employment, and an application for such benefits is brought in the worker's name. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2002) § 13.72.) Fremont was going to have to pay *someone* those benefits, and paid Nesmith because that was what the Board ordered. Fremont had no vested interest in who received the benefits, its sole concern was to try to recoup them from third party tortfeasors. Defendants concede Fremont could have sued them had benefits been paid to an heir or to the state. Considering the statutory scheme, we perceive no reason why the Legislature would want to deny Fremont recovery in this third scenario.

■ The California Supreme Court has explained that subrogation principles must be applied so as to further the legislative purpose immanent in the compensation statutes. (*Board of Administration v. Glover* (1983) 34 Cal.3d 906, 916–917 [196 Cal.Rptr. 330, 671 P.2d 834].) The legislative purpose is to provide that "the third party is liable for all the wrong his tortfeasance brought about; this includes both the damage to the employee and payments made or required to be made by the employer." (*Smith, supra,* 276 Cal.App.2d at p. 162; see *Sanfax, supra,* 19 Cal.3d at p. 873.) There is a corresponding public policy to reduce the cost of compensation insurance by allowing carriers to recoup payments. (*Abdala, supra,* 3 Cal.App.4th at p. 377.) Thus the courts "discern a clear legislative policy militating in favor of reimbursement whenever possible." (*Ibid.* See *C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 384 [22 Cal.Rptr.2d 360].) When a carrier has *paid out money* it should be able to recoup. (See *Abdala, supra,* at p. 375; *Harvey v. Boysen* (1975) 50 Cal.App.3d 756, 760–761 [123 Cal.Rptr. 740].) As we have previously pointed out, "The compensation system was not designed to extend immunity to strangers." (*Sanstad v. Industrial Acc. Com.* (1959) 171 Cal.App.2d 32, 35 [339 P.2d 943].)

We decline to discuss in detail foreign authorities arising on similar facts. (See, e.g., 16 Couch on Insurance, *supra,* § 225:200, p. 225–169; *Allstate*

*Insurance Co v. Bliss* (Utah 1986) 725 P.2d 1330; *Ore-Ida Foods, Inc. v. Indian Head Cattle Company* (1981) 290 Or. 909 [627 P.2d 469]; *United States Fidelity & Guaranty Company v. Higdon* (1959) 235 Miss. 385 [109 So.2d 329].) "Decisions from other states are not greatly helpful to us in the solution of our own problems, due to the vital differences to be found in the terms of either their compensation acts or else their wrongful-death statutes." (*Superior Minerals Co. v. Missouri Pac. R. Co.* (1932) 227 Mo.App. 1044, 1051 [45 S.W.2d 912, 914].)

For the reasons we have set out above, we conclude Fremont has stated a cause of action against defendants and the trial court should have overruled the demurrer.

## DISPOSITION

The judgment is reversed with directions to the trial court to overrule the demurrer. Fremont shall recover its costs on appeal. (Cal. Rules of Court, rule 27(a).)

Scotland, P. J., and Nicholson, J., concurred.