[No. B052910. Second Dist., Div. Two. Feb. 4, 1992.]

FADIA ABDALA, Plaintiff and Respondent, v.
FAWZIA AZIZ, Defendant and Respondent;
AETNA CASUALTY & SURETY COMPANY, Intervener and Appellant.

## COUNSEL

Molfetta & Raymond and Alan L. Hershfield for Intervener and Appellant.

Charles J. Fleishman for Plaintiff and Respondent.

Knapp, Petersen & Clarke and Kevin J. Stack for Defendant and Respondent.

## OPINION

HART, J.*—On this appeal we must determine whether an employer[1] is entitled to reimbursement for workers' compensation benefits paid to its employee from a personal injury settlement between the employee and a third party tortfeasor.

### I.

On June 19, 1987, Fadia Abdala (plaintiff), an employee of Foodmaker, Inc. (doing business as "Jack-in-the-Box"), sustained a back injury in an industrial related accident. Aetna Casualty & Surety Company (Aetna), the workers' compensation carrier for Foodmaker, thereafter provided medical

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial District.

[1]As used here, the term "employer" includes the employer's compensation carrier. (Lab. Code, § 3850.)

All statutory references are to the Labor Code unless otherwise indicated.

and other benefits to her under its policy. Some 14 weeks later, on October 1, 1987, plaintiff was involved in an automobile collision unrelated to her employment which allegedly aggravated her preexisting injuries. She subsequently brought suit against Fawzia Aziz (defendant), one of the persons purportedly at fault in the collision,[2] and made written demand on Aetna for payment of additional medical benefits. The basis of that latter claim was set forth in a letter from plaintiff's counsel to Aetna in July 1988: "The industrial accident may not be the exclusive cause of her present back condition and the medical bills which she incurred but as long as it is a proximate or legal cause, the insurance company and/or employer is responsible for all of the bills." Acquiescing to the request, Aetna commenced paying additional benefits for the aggravation of plaintiff's preexisting injuries caused by the collision.

When defendant failed to answer the complaint in the personal injury action, a default was taken against her. A subsequently filed motion to be relieved from default was denied. On May 17, 1990, the date set for a hearing on defendant's motion for reconsideration, her counsel informed the court that a settlement had been reached with plaintiff and requested the matter be taken off calendar. Aetna, having no independent knowledge of the settlement, did not participate in the negotiations which preceded it. Similarly, at the time of settlement, neither defendant nor her insurance carrier knew of plaintiff's claim for workers' compensation benefits or, therefore, of the possibility that Aetna or any other party would have a claim for reimbursement against any of the settlement proceeds. Defendant and her carrier apparently entered into the settlement in good faith, believing that they had effected a full and final resolution of all claims arising out of the collision.

After learning that plaintiff had settled the suit for $50,000, Aetna, on June 4, 1990, filed a petition to intervene in the action. Accompanying that petition was a complaint in intervention, an application for a first lien in the amount of $32,000, and a motion to set aside the settlement. By those pleadings Aetna essentially sought to recoup the additional compensation benefits it had paid plaintiff because of the injuries she incurred in the automobile collision. Although the trial court initially granted the petition to intervene, it subsequently denied the request to set aside the settlement.

Sometime after the filing of a first amended complaint in intervention, defendant demurred, contending that Aetna had no right to seek reimbursement from her for any workers' compensation benefits paid plaintiff as a result of the automobile accident. The trial court eventually sustained the

[2]Plaintiff also named Michael Edward McCardle as a defendant in the action. He is not a party to this appeal.

demurrer without leave to amend, struck the application for a lien, and denied Aetna's renewed request to set aside the settlement.[3] Before these orders became final, defendant apparently paid the settlement proceeds to plaintiff and then filed a satisfaction of judgment. The court thereafter entered a judgment dismissing the amended complaint in intervention, and Aetna filed this appeal.[4]

## II.

Under the workers' compensation statutes, an employee who suffers an industrial injury may recover compensation benefits from his or her employer without regard to the negligence of either party. (§ 3600.) With certain specified exceptions, an injured employee's compensation claim against the employer constitutes an exclusive remedy. (§§ 3601, 3602.) Where the tort of a third party causes injury to an employee, however, section 3852 permits the employee to sue the tortfeasor for *all* damages proximately resulting from the injury even though he or she has received from an employer workers' compensation benefits covering some of the same injuries and resulting disability.[5]

To prevent an employee from retaining both third party damages *and* workers' compensation benefits for the same injuries and disabilities, the Labor Code permits an employer to recover workers' compensation benefits it has become obligated to pay and/or has paid by (1) bringing an action directly against the tortfeasor (§ 3852), (2) joining as a party plaintiff or intervening in an action brought by the employee (§ 3853),[6] or (3) allowing

---

[3]The court summarized its ruling as follows:

"The reason why the court is not allowing the lien is because the settlement came before the lien was requested, and the court determines that the second accident was of a non-industrial nature; that Labor Code section 3852 is very specific and, therefore, Aetna has no action in this cause."

[4]Aetna appeals from both the order striking its application for a lien and the judgment of dismissal entered after the trial court sustained defendant's demurrer without leave to amend.

[5]Section 3852 provides in relevant part as follows:

"The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, . . . may likewise make a claim or bring an action against the third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee or to his or her dependents."

[6]Section 3853 states in relevant part:

". . . If the action [against the third person] is brought by either the employer or employee, the other may, at any time before trial on the facts, join as party plaintiff or shall consolidate his action, if brought independently."

the employee to prosecute the action and then applying for a first lien against the resulting judgment or settlement. (§ 3856, subd. (b).)[7]

We must determine here whether any of the foregoing alternatives are available to an employer who pays additional compensation benefits to an injured employee because of a subsequent nonindustrial accident caused by a negligent third party. The trial court essentially reasoned that an employer's subrogation rights under sections 3852, 3853, and 3856 arise only in cases of *industrial* injury, i.e., an injury arising out of and in the course of employment. In support of that interpretation, plaintiff and defendant (hereinafter sometimes referred to as "respondents") argue that had the Legislature intended otherwise it would not have limited the definition of the term "injury," as used in the Labor Code, to "an injury or disease *arising out of the employment*." (§ 3208, italics added.) Aetna counters that the plain language of section 3852, providing that "any employer who *pays*, or *becomes obligated to pay compensation* [*may exercise subrogation rights*]," (italics added) is clearly not limited to "industrial" injuries.

Our analysis of the applicable law convinces us that respondents' position is inconsistent with the principles of equitable subrogation which underlie the workers' compensation scheme in this state. We conclude that section 3852 et seq. must be interpreted to allow employers subrogation rights whenever, and to whatever extent, an employee suffers a subsequent tortious injury *which also increases the employer's liability for compensation*. This is true whether or not that subsequent injury is industrial in nature.

We start with the basic issue as framed by the pleadings in the underlying case: an automobile collision, assertedly the fault of defendant, aggravated industrial injuries plaintiff earlier had incurred during the course of her employment. Viewed in that context, defendant's liability extended solely to plaintiff and consisted of damages for personal injuries proximately caused by her wrong. The context of the action inexorably changed, however, when, as a result of the earlier industrial injury, plaintiff's employer became obligated to pay the expense of all treatment "reasonably required to cure or relieve from the effects of the injury." (§ 4600.)

---

[7]Section 3856, subdivision (b) provides:

"If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852."

The employer's obligation to pay plaintiff additional compensation for the injuries she sustained in the automobile collision arose because of the well-established rule prohibiting apportionment of liability for temporary disability and medical benefits. Where the need for either or both is caused partly by industrial and partly by nonindustrial factors, the employer is liable for all of such costs, including those related to the nonindustrial incident if needed to cure the industrial condition. (See *Braewood Convalescent Hospital* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 165-166 [193 Cal.Rptr. 157, 666 P.2d 14]; *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 405-406 [71 Cal.Rptr. 678, 445 P.2d 294]; *Vela* v. *Workmen's Comp. Appeals Bd.* (1971) 22 Cal.App.3d 513 [99 Cal.Rptr. 387].)

Although the employer's payment of benefits for the cumulative injuries served to reduce the losses plaintiff incurred as a result of the nonindustrial accident, that reduction was not meant to absolve the third party tortfeasor from full or partial liability in damages due to her wrongful conduct. Under present tort theory the wrongdoer still bears the ultimate loss. ■ Thus, "one who bears the costs of personal injuries inflicted by a wrongdoer may be subrogated pro tanto to the injured person's claims against the wrongdoer for damages." (*Ventura County Employees' Retirement Association* v. *Pope* (1978) 87 Cal.App.3d 938, 951 [151 Cal.Rptr. 695].) Section 3852, granting employers the right to proceed against third parties in such circumstances, is merely a legislative recognition of this equitable doctrine of subrogation. (*Breese* v. *Price* (1981) 29 Cal.3d 923, 929 [176 Cal.Rptr. 791, 633 P.2d 987]; *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 874 [140 Cal.Rptr. 638, 568 P.2d 363].)

The policy underlying section 3852 is avoidance of double recovery by the employee who elects to claim benefits under the Labor Code and also seeks compensation for his or her injuries from a negligent third party. (*County of San Diego* v. *Sanfax, supra,* 19 Cal.3d at p. 873, fn. 6; *Harvey* v. *Boysen* (1975) 50 Cal.App.3d 756, 761 [123 Cal.Rptr. 740].) Where an employer is required to provide benefits to an employee for injuries caused by a third party's negligence, the statutory scheme assures that the employer, not the employee, shall, at least ultimately, be entitled to recover the value of those benefits from the tortfeasor. (*Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 976 [138 Cal.Rptr. 220].) Our discussion of this point in *Ventura County Employees' Retirement Association* v. *Pope, supra,* 87 Cal.App.3d at pages 951-952 is applicable here:

"An adjunct of subrogation is the rule prohibiting double recovery of damages, a rule of special importance in the prosecution of subrogation claims because the proration of damages among those who have shared the

costs of personal injuries increases the possibility of duplicate claims for the same loss. Only one totality of recovery of damages for personal injuries is allowed, and only one totality of liability may be imposed on the tortfeasor. [Citations.] Duplicate recovery of damages is barred, and neither double recovery of the same item of loss nor double liability for the same item of injury is permitted. [Citations.] Whether an action is brought by an employer, a compensation carrier, [or] an employee, . . . the burden on the tortfeasor remains the same. [Citations.]" (See also *Board of Administration* v. *Glover* (1983) 34 Cal.3d 906, 912 [196 Cal.Rptr. 330, 671 P.2d 834].)

■ Although the workers' compensation statutes are primarily procedural in nature, they "make it possible for the third party to be held liable 'for all the wrong his tortfeasance brought about' [citation.] regardless of whether it is the employee or the employer who brings suit." (*County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d at p. 873.) Thus, to the extent that the damages which the employee recovers from a third party simply duplicate the benefits which the employee has already received from the employer, the employee's own recovery provides a fund from which the employer may draw. (*Id.* at pp. 872-873.)

One commentator has noted that the reimbursement of benefits paid out when the employee recovers a personal injury judgment or settlement against the third party tortfeasor is a necessary part of the underlying workers' compensation scheme. " 'Subrogation in workmen's compensation insurance involves California employers because it affects the rates they pay for insurance; it also has a relationship to the level of workmen's compensation benefits paid and in this regard affects the interest of all employees, not merely those with third-party actions. The connection of such subrogation policies with industrial safety practices is also a matter of concern to the public generally as well as to employers and their employees.' " (Lasky, Subrogation Under the California Workmen's Compensation Laws—Rules, Remedies and Side Effects (1972) 12 Santa Clara L. Rev. 1, 4; see also *Burrow* v. *Pike* (1987) 190 Cal.App.3d 384, 399 [235 Cal.Rptr. 408].)

■ Based upon the foregoing, we discern a clear legislative policy militating in favor of reimbursement whenever possible. The employer who assumes the burden of paying benefits for all damages proximately related to an industrial accident, including those caused by a subsequent third party tortfeasor, surely is entitled to seek reimbursement from the party responsible for the aggravation of the industrial injuries. The employer may, however, recover only to the extent the tort injury exacerbated the employee's condition, i.e., only to the extent compensation was increased by the tort injury. (See *Breese* v. *Price, supra,* 29 Cal.3d at pp. 928-931; *Hodge* v.

*Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 501, 512, 515 [176 Cal.Rptr. 675]; *Rhode* v. *National Medical Hosp.* (1979) 93 Cal.App.3d 528, 535 [155 Cal.Rptr. 797].)

As we see it, such a construction of section 3852 renders the statutory procedures fully consistent with common law principles of equitable subrogation.[8] Any contrary holding which denied the employer the right to pursue a third party wrongdoer under the facts presented here would be violative of the strong public policy against double recovery in either tort or workers' compensation actions. That policy could not be properly effectuated unless subrogation rights were allowed in all instances where increased compensation is one effect of the tort injury.

 Applying these principles to the facts at bench, we can only conclude that Aetna, in assuming a portion of the costs of personal injuries suffered by plaintiff as a consequence of the accident, specifically, her medical expenses, succeeded, at least in part, to plaintiff's claim for damages against defendant. Aetna therefore was entitled to avail itself of one or more of the alternatives (direct action, intervention, or lien) specified in section 3852 et seq. The question remains, however, whether Aetna's attempt to seek reimbursement for the additional compensation it paid plaintiff was timely. In considering that issue, we focus solely on Aetna's application for a lien on the settlement proceeds.[9]

Section 3856, subdivision (b), as previously indicated, entitles the employer to a lien against his employee's judgment, or settlement, in "the amount of the employer's expenditure for compensation . . ." (See *Harvey* v. *Boysen, supra,* 50 Cal.App.3d 756.) Such a lien may timely be asserted any time *before* satisfaction of judgment or, where the case is settled, before consummation of the settlement. (*Id.* at p. 762; see also *Jacobsen* v. *Industrial Acc. Com.* (1931) 212 Cal. 440, 448 [299 P. 66].)

Here, Aetna's application for a lien was filed some two weeks after plaintiff and defendant had reached apparent agreement on the terms of the

[8]As observed by the Supreme Court in *County of San Diego* v. *Sanfax, supra,* 19 Cal.3d at pages 873-874: "The workers compensation statutes governing employer and employee actions against third parties do not define the substantive law which determines whether an employee or an employer will in fact recover. [Citation.] Instead, the substantive law which governs employer and employee actions is usually the general tort law. As applied in cases involving employee and employer third party claims, however, the general tort law works in parallel with the procedures which the Legislature has set up."

[9]Although Aetna also sought to intervene in plaintiff's on-going action against defendant, we need not determine here whether the complaint in intervention was timely filed. On this appeal Aetna has made it clear that it would be satisfied to rely on the settlement proceeds for its recovery of a proportionate share of the benefits it paid plaintiff.

settlement, but well before the proceeds were distributed. While the better practice is for the employer to notify the other parties of its lien claim as soon as it becomes aware of the third party action (see Swezey, Cal. Workers' Damages Practice (Cont.Ed.Bar 1985), § 4.32, p. 102.), we cannot say Aetna's claim was untimely under the facts of this case. This is particularly true given that Aetna was unaware of the settlement negotiations until sometime *after* an agreement was reached by the participating parties because of plaintiff's failure to provide appropriate notice.[10] (See § 3860; *Board of Administration* v. *Glover, supra*, 34 Cal.3d at pp. 912-915.)

In light of our conclusion that Aetna's application for a lien was timely brought, we ordinarily would reverse the trial court's contrary decision and remand the matter for further proceedings consistent with the views expressed herein. That result is not possible here because the settlement proceeds apparently were paid to plaintiff immediately following the trial court's ruling and before Aetna filed its notice of appeal. Is Aetna then without a remedy? Not entirely.

If an employee has obtained a judgment against a third party for his or her compensable injury, section 3858 provides that "[n]o satisfaction of such judgment in whole or in part, shall be valid without giving the employer notice and a reasonable opportunity to perfect and satisfy his lien."[11] One federal district court applying California law has interpreted this language to impose an affirmative obligation on the employee to notify the employer of an impending satisfaction of judgment. (See *Popovich* v. *United States* (C.D. Cal. 1987) 661 F.Supp. 944.) In so finding, the court stated as follows:

"When the . . . [statute] is read logically and in the context of the entire statutory scheme, one is left with two conclusions. ■ First, when the employee has sued a third party for negligence and both are aware of the employer's lien claim, the employer may refrain from taking any further action in prosecuting or perfecting its lien until it receives notice that a final judgment favorable to the employee has been rendered and that the judgment is about to be satisfied. Second, the satisfaction of such a judgment does not operate to extinguish the lien rights of the employer unless notice has been given of the impending satisfaction of the judgment so that the employer has had a reasonable opportunity, before the judgment is actually paid and

---

[10]Although Aetna was aware of the third party action, it apparently never had been given actual notice of the filing of complaint as required by Labor Code section 3853.

[11]We see no reason why the notification requirement of section 3858 should not apply to judgments and settlements alike. (See *Harvey* v. *Boysen, supra*, 50 Cal.App.3d at p. 760, and the cases cited therein.) As we stated in a similar context in *Carden* v. *Otto* (1974) 37 Cal.App.3d 887, 897 [112 Cal.Rptr. 749]: "Proper and orderly procedure dictates that the notice be a formal one and not left to informal communication between counsel."

satisfied, to perfect its lien and obtain a court order requiring direct payment of the lien to it.

"The duty to give such notice falls clearly on the employee. If he gives it and the employer fails to act promptly to perfect its lien, its lien rights will be lost. *If the employee fails to give such notice and the employee accepts payment of the judgment, the employee may well be liable to the employer for the amount of the lien.*" (661 F.Supp. at p. 948, italics added.)[12]

We agree with the court's reasoning in *Popovich* and adopt it here. The record before us in the case at bench contains no indication that Aetna ever received the type of notice contemplated by section 3858 at anytime prior to the filing of the satisfaction of judgment. Absent such notice by plaintiff, Aetna was denied the opportunity to obtain an order precluding payment of the settlement proceeds pending the outcome of this appeal. (See *Heaton v. Kerlan* (1946) 27 Cal.2d 716, 721 [166 P.2d 857].)

Since the settlement has been fully satisfied, no choses in action or property remain on which Aetna's lien can attach. Under these circumstances, plaintiff's receipt of the settlement proceeds may well have afforded her the type of double recovery the workers' compensation statutes seek to forestall. On the facts presented here, such double recovery could give rise to a quasi-contractual cause of action by Aetna against plaintiff in a separate proceeding. (See *Popovich v. United States, supra,* 661 F.Supp. at p. 951.) As pointed out by the court in *Popovich,* "[t]here is also at least the possibility of a new action by the employer against the employee for breach of the statutory duty to notify the employer of the impending satisfaction of judgment." (*Ibid.*)

Based upon the foregoing, we think it clear that a reversal of the order striking the lien and of the judgment of dismissal would not afford Aetna the relief it seeks. Aetna, therefore, is left with whatever remedy it may have against plaintiff in a separate action to collect its proportionate share of the

---

[12]The court went on to conclude that section 3858 does *not* impose a similar duty of notification on the third party tortfeasor. (*Id.* at pp. 948-949.) Its observations in this regard are applicable here: "If the employer can now require the . . . [third party tortfeasor] to pay the amount of the lien directly to the employer after having paid its judgment debt to . . . [the employee] in full, . . . [the employee] would have the benefit of what courts have called a 'double recovery.' [Citation.] In addition, such a result would promote multiplicity and circuity of litigation. In the event it paid twice, . . . [the third party tortfeasor] would seem to have a clear case against . . . [the employee] for recovery of the amount it is forced to pay to the employer on account of the lien." (*Id.* at p. 949.)

settlement.[13] (See *Board of Administration* v. *Glover, supra,* 34 Cal.3d at pp. 914-919.)

### III.

The judgment of dismissal and the order appealed from are affirmed. Appellant to recover costs on appeal.

Gates, Acting P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied March 5, 1992, and the petition of respondent Fadia Abdala for review by the Supreme Court was denied April 23, 1992.

---

[13]Alternatively, Aetna *may* be able to offset its claim against any future benefits it may pay to compensate plaintiff for the additional injuries she sustained in the automobile collision. (See § 3861.)