Filed 11/14/17; Certified for Publication 12/13/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DENISE MICHELLE DUNCAN, | |
| Plaintiff and Respondent, | G054220 |
| v. | (Super. Ct. No. 30-2014-00735595) |
| WAL-MART STORES, INC., | O P I N I O N |
| Defendant; | |
| HARTFORD ACCIDENT & INDEMNITY CO., | |
| Claimant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed as modified.

England Ponticello & St.Clair, Barry W. Ponticello, Renee C. St.Clair and Kristina M. Pfeifer for Claimant and Appellant.

Karns & Karns and William M. Karns for Plaintiff and Respondent.

\* \* \*

Respondent Denise Michelle Duncan sued Wal-Mart Stores, Inc. (Wal-Mart) for personal injuries she sustained at one of Wal-Mart's stores while acting within the course and scope of her employment with Acosta, Inc. (Acosta). The trial court entered judgment finding Wal-Mart liable for Duncan's injuries. Under Labor Code sections 3852 and 3856,[1] appellant Hartford Accident & Indemnity Company (Hartford) applied for a lien on Duncan's judgment to obtain reimbursement for the workers' compensation benefits it paid Duncan, including medical expenses and temporary disability payments for lost wages. Although the judgment included compensation for Duncan's medical expenses, it did not include compensation for Duncan's lost wages because she did not seek those damages at trial. The court granted Hartford a lien on Duncan's judgment, but reduced the lien amount to exclude the indemnity payments for lost wages.

Hartford appeals the trial court's postjudgment order, arguing the court exceeded its authority by reducing the lien amount for any item other than reasonable attorney fees and costs. We agree because section 3856's plain language and the case law applying it grant Hartford a first lien on the judgment in the amount it paid Duncan for worker's compensation benefits. Duncan's choice not to seek lost wages at trial does not diminish Hartford's lien rights under the workers' compensation statutory scheme. We therefore modify the order granting the lien to include the amount of lost wages Hartford paid Duncan and affirm the postjudgment order as modified.

I

FACTS AND PROCEDURAL HISTORY

In August 2012, Duncan was acting within the course and scope of her employment with Acosta when she fell and injured herself on Wal-Mart's premises.

_____

[1] All statutory references are to the Labor Code.

2

Hartford was Acosta's workers' compensation insurer and paid Duncan more than $152,000 in benefits, including more than $115,000 in medical expenses and roughly $37,000 in temporary disability indemnity for Duncan's lost wages.

In July 2014, Duncan filed this lawsuit against Wal-Mart seeking recovery for her medical expenses, lost wages and earning capacity, and pain and suffering. Following a three-day bench trial, the court found Wal-Mart 100 percent at fault and entered judgment against Wal-Mart for $355,000, including $178,000 in past medical expenses, $102,000 in future medical expenses, and $75,000 in past and future pain and suffering. Although Duncan's complaint sought lost wages and earning capacity, the court did not award Duncan damages for these items because she did not ask for them at trial.

Hartford filed a notice and application for a lien on the judgment based on the workers' compensation benefits it paid Duncan. The trial court issued an order to show cause why it should not grant the requested lien. Duncan filed an opposition, arguing the court should reduce the lien amount by the nearly $37,000 Hartford sought for the temporary disability benefits it paid because Duncan did not present evidence regarding those payments at trial and therefore the court did not award her that amount as damages. According to Duncan, Hartford is entitled to a lien on the judgment solely to prevent her from recovering the same damages from both Wal-Mart and Hartford, and because she did not recover the disability indemnity from Wal-Mart, Hartford is not entitled to a lien for those payments. Duncan also argued she was entitled to an offset against the lien for the reasonable amount of attorney fees and costs she incurred in suing Wal-Mart. In reply, Hartford argued it had a statutory right to a lien in the full amount of the workers' compensation benefits it paid Duncan regardless of whether she sought and obtained those damages from Wal-Mart. Hartford also disputed the amount of Duncan's attorney fees and costs.

3

After a hearing, the trial court found the reasonable amount of attorney fees and costs Duncan incurred was roughly $63,000, and granted Hartford a lien on the judgment for nearly $53,000. The court provided no explanation on how it determined the amount of the lien, but the parties agree the court excluded from the lien the disability indemnity payments Hartford made because the amount Hartford sought ($152,489.99) minus both the reasonable attorney fees and costs the court found ($62,623.66) and the disability indemnity payments ($36,929.32) equals the amount of the lien allowed by the court ($52,937.01). This appeal followed.

II

DISCUSSION

A.      *Legal Background*

Under the workers' compensation statutes (§ 3200, et seq.), an employee who suffers an injury during the course and scope of employment may recover compensation benefits from the employer without regard to the negligence of either the employee or the employer. (§ 3600; see *Abdala v. Aziz* (1992) 3 Cal.App.4th 369, 374 (*Abdala*).) With few exceptions, the employee's claim for compensation benefits is the employee's exclusive remedy against the employer; the employee generally may not sue the employer to recover in tort. (§§ 3601, 3602; see *Abdala*, at p. 374.)

"The policy [underlying this system] is that workers do not have to prove fault, adjudication is swift, but the benefits are smaller than might be obtained as tort damages. [Citations.] The law: (1) spreads the cost of industrial injuries to goods and services; (2) provides prompt, limited compensation to injured workers, regardless of fault; (3) increases industrial safety; and (4) insulates employers from tort liability." (*Fremont Comp. Ins. Co. v. Sierra Pine* (2004) 121 Cal.App.4th 389, 395 (*Fremont*).)

The workers' compensation statutes, however, do not limit the injured employee's right of action for damages against any person other than his or her employer.

4

(*Abdala*, *supra*, 3 Cal.App.4th at p. 374; *Tate v. Superior Court* (1963) 213 Cal.App.2d 238, 243-244 (*Tate*).) "Where the tort of a third party causes injury to an employee, . . . section 3852 permits the employee to sue the tortfeasor for *all* damages proximately resulting from the injury even though he or she has received from an employer workers' compensation benefits covering some of the same injuries and resulting disability." (*Abdala*, at p. 374.) Section 3852 also provides that any employer who pays an employee compensation benefits may bring an action against the third party tortfeasor who injured the employee. [2] (*Tate*, at pp. 243-244.)

Section 3853 requires the employee to give the employer notice if the employee sues a third party for injuries the employee suffered during the course and scope of employment. (§ 3853; *Tate*, *supra*, 213 Cal.App.2d at p. 246.) The employer has an absolute right to intervene in any action brought by the employee against a third party tortfeasor, and if the employee and employer independently sue the tortfeasor, the actions must be consolidated. [3] (§ 3853; *Tate*, at p. 244.) The employer, however, is not required to intervene in the employee's lawsuit, and instead may allow the employee to prosecute the lawsuit against the tortfeasor for the benefit of both the employee and employer. (*Tate*, at pp. 246-247.)

---

[2] Section 3852 provides, "The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay salary in lieu of compensation, or who pays or becomes obligated to pay an amount to the Department of Industrial Relations pursuant to Section 4706.5, may likewise make a claim or bring an action against the third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee or to his or her dependents."

[3] The employer also must give the employee notice if it files a lawsuit against a third party tortfeasor who injured the employee, and the employee has an absolute right to join in the employer's lawsuit. (§ 3853.)

"If the employee alone prosecutes the action against the third party, the employer may nevertheless recover what he has paid out by applying for a lien on the employee's judgment." (*Tate*, *supra*, 213 Cal.App.2d at p. 244.) Specifically, section 3856, subdivision (b) (section 3856(b)), provides: "If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852."

The Labor Code therefore permits an employer to recover workers' compensation benefits it has become obligated to pay in three ways: "(1) bringing an action directly against the tortfeasor (§ 3852), (2) joining as a party plaintiff or intervening in an action brought by the employee (§ 3853), or (3) allowing the employee to prosecute the action and then applying for a first lien against the resulting judgment or settlement. (§ 3856(b).)"[4] (*Abdala*, *supra*, 3 Cal.App.4th at pp. 374-375, fns. omitted; see *Fremont*, *supra*, 121 Cal.App.4th at p. 396.)

"The policy underlying [these statutory provisions] is avoidance of double recovery by the employee who elects to claim benefits under the Labor Code and also seeks compensation for his or her injuries from a negligent third party. [Citations.]

---

[4] The employer's right to reimbursement may be limited or denied if the employer's negligence contributed to or caused the employee's injuries. (*DaFonte v. Up–Right, Inc.* (1992) 2 Cal.4th 593, 599.) Here, neither Duncan nor Wal-Mart claimed Acosta or its other employees contributed to or caused Duncan's injuries.

Where an employer is required to provide benefits to an employee for injuries caused by a third party's negligence, the statutory scheme assures that the employer, not the employee, shall, at least ultimately, be entitled to recover the value of those benefits from the tortfeasor." (*Abdala*, *supra*, 3 Cal.App.4th at p. 376; see *County of San Diego v. Sanfax Corp.* (1977) 19 Cal.3d 862, 872 (*Sanfax*) ["[these statutory provisions] seek to insure, first, that, regardless of whether it is the employee or the employer who sues the third party, both the employee and the employer recover their due, and, second, that, as far as possible, the third party need defend only one lawsuit"].)

The chapter of the Labor Code establishing these employer remedies defines the term "employer" to include its insurer. (§ 3850, subd. (b).) The remedies available to the employer therefore are equally available to the insurer, and the insurer may sue in its own name without joining the employer as a party. (*Tate*, *supra*, 213 Cal.App.2d at p. 244.)

B. *The Trial Court Erred By Excluding the Disability Payments for Lost Wages From Hartford's Statutory Lien*

Hartford contends the trial court exceeded its authority by excluding from Hartford's lien the undisputed amount Hartford paid Duncan as disability benefits for her lost wages. According to Hartford, section 3856(b) authorized the court to deduct from Hartford's lien only the reasonable amount of attorney fees and costs Duncan incurred for the benefit of Duncan and Hartford. We agree.

The interpretation of section 3856(b) is a question of law that we review de novo. (*Jarman v. HCR ManorCare, Inc.* (2017) 9 Cal.App.5th 807, 822.) "Our primary goal in construing a statute is to ascertain and effectuate the Legislature's intent. [Citation.] "''"Because statutory language "generally provide[s] the most reliable indicator" of that intent [citations], we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context [citation]. [Citation.] If the language contains no ambiguity, we presume the Legislature meant what it said, and

7

the plain meaning of the statute governs.'"""' [Citation.] If a statute is amenable to different interpretations, the interpretation that leads to the more reasonable result should be followed. [Citation.] We must construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole." (*Baker v. Workers' Comp. Appeals Bd.* (2017) 13 Cal.App.5th 1040, 1046.)

When an injured employee alone prosecutes a lawsuit against a third party tortfeasor, section 3856(b)'s plain language grants the employee's employer "a first lien" against any judgment the employee obtains against the tortfeasor in "the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852." (§ 3856(b); see *Abdala*, *supra*, 3 Cal.App.4th at p. 378 ["Section 3856[(b)] . . . entitles the employer to a lien against his employee's judgment, or settlement, in 'the amount of the employer's expenditure for compensation'"].)

"The expenditures for 'compensation' for which a lien is allowed the employer or his insurance carrier include expenditures for all benefits conferred on the employee by sections 3201-6002 of the Labor Code [citation], and therefore include expenditures for medical and hospital treatment [citations], as well as for disability benefits awarded." (*Heaton v. Kerlan* (1946) 27 Cal.2d 716, 719 (*Heaton*); see § 3207 ["'Compensation' means compensation under this division and includes every benefit or payment conferred by this division upon an injured employee, or in the event of his or her death, upon his or her dependents, without regard to negligence"].)

"All benefits required to be paid by the employer, even though . . . in excess of those ordinarily enjoined by the Workmen's Compensation Act, are deemed the 'compensation' and 'special damages' of section 3856[(b)] and are subject to the employer's lien. Thus, continued salary paid the workman during disability as required by ordinance [citations], or municipal charter [citation], or statute [citations], is subject to

8

the employer's lien.  Such salary, for which the employee renders no services, is deemed to be 'compensation' for which, under sections 3852 and 3856[(b)] the employer is given the right of reimbursement."  (*Harvey v. Boysen* (1975) 50 Cal.App.3d 756, 761 (*Harvey*).)

The lien includes all amounts the employer paid the employee regardless of whether the employee sought or recovered those amounts from the third party tortfeasor: "[U]nless the employer's recovery is barred by his contributory negligence, he will be entitled to a first lien on the entire amount the employee recovers after litigation expenses, *regardless of what elements of damage the employee proves*.  [Citation.]  If . . . [the employee] does not intend in this action to recover any elements of damage which duplicate his compensation benefits, that fact will not prevent the employer from asserting the lien which sections 3856 and 3857 give him for benefits paid."[5]  (*Tate*, *supra*, 213 Cal.App.2d at p. 248, italics added.)  Moreover, the employer's lien attaches to the entire judgment the employee obtained, including any award for pain and suffering or other damages that the employee cannot recover through the workers' compensation system.  (*Heaton*, *supra*, 27 Cal.2d at p. 723 ["it is clear that the employer's lien attaches to the entire judgment and that it is no[t] . . . necessary to segregate the part thereof that represents damages for pain and suffering"].)

The only deduction section 3856(b) allows from the lien is for "the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer."  (§ 3856(b).)  The statute makes clear that these fees and costs are deducted from the employer's lien and paid first.  This ensures the employer shares in the expense of obtaining the judgment from which it benefits.  (*Quinn v. State of*

---

[5]  Section 3857 provides, "The court shall, upon further application at any time before the judgment is satisfied, allow as a further lien the amount of any expenditures of the employer for compensation subsequent to the original order."

*California* (1975) 15 Cal.3d 162, 169-170, 175-176.)  The statute does not authorize any other offset or deduction from the employer's lien.

Here, it is undisputed Hartford paid Duncan nearly $153,000 in compensation under the workers' compensation statutes based on the injuries she suffered on Wal-Mart's property.  From that amount, the trial court deducted more than $62,000 as reasonable attorney fees and costs Duncan incurred to obtain her judgment against Wal-Mart, and Hartford does not challenge that deduction.  The court also deducted roughly $37,000 before granting Hartford a lien for approximately $53,000.  Although the court did not specify, the parties agree the second deduction was for Duncan's lost wages that Hartford paid to Duncan, but she did not seek at trial, and therefore were not included in the judgment.  The court had no authority to deduct this latter amount from Hartford's lien.

Hartford paid Duncan's lost wages because of her injuries, and therefore they constitute compensation that must be included in Hartford's lien under section 3856(b).  (*Heaton*, *supra*, 27 Cal.2d at p. 719; *Harvey*, *supra*, 50 Cal.App.3d at p. 761; *Tate*, *supra*, 213 Cal.App.2d at p. 248.)  It is irrelevant that the judgment Duncan obtained against Wal-Mart did not include the lost wages based on Duncan's failure to seek them as damages.  (*Tate*, p. 248.)  The Legislature has declared that, after attorney fees and costs have been paid, the employer is entitled to full reimbursement for the compensation it paid to the employee, and the employee is entitled to the remaining portion of the judgment only after the employer has been fully reimbursed.  (*Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 741-742 & fn. 5 (*Gapusan*); see *Abdala*, *supra*, 3 Cal.App.4th at p. 376.)

Ensuring the employer is fully reimbursed for the compensation it paid before the employee recoups anything other than attorney fees and costs is consistent with the overall purpose of the workers' compensation system, which guarantees employees prompt payment for industrial injuries without regard to fault in exchange for

10

a smaller recovery than the employee may obtain through litigation. (See *Fremont*, *supra*, 121 Cal.App.4th at p. 395; *Abdala*, *supra*, 3 Cal.App.4th at p. 376.) Allowing the employee to manipulate the employer's reimbursement rights by selectively seeking only certain items of damages from a third party tortfeasor would undermine the system created by the Legislature.[6]

Duncan does not contend section 3856(b) authorized the trial court to deduct the lost wages from Hartford's lien, nor does she offer an interpretation of that subdivision that would support the court's order. Ignoring section 3856(b) and its plain language, Duncan instead contends Hartford's lien and reimbursement rights are "subject to the principles of equitable subrogation," and therefore the court could limit Hartford's lien to the specific damages that were included in both the workers' compensation benefits Hartford paid Duncan and the judgment Duncan obtained against Wal-Mart. Duncan misapplies equitable subrogation principles and ignores case law that has rejected this argument.

Equitable subrogation is a legal device that allows a party who satisfies a loss caused by a third party tortfeasor to step into the injured person's shoes and recover the loss from the tortfeasor. (*Fremont*, *supra*, 121 Cal.App.4th at p. 398.) The cases Duncan cites to support her argument state that, by enacting section 3852 to grant an employer the statutory right to sue a third party tortfeasor who injured the employer's

---

[6] In passing, Duncan suggests Hartford could have intervened in the lawsuit to ensure the payments for lost wages were recovered from Wal-Mart. As explained above, however, Hartford was not required to intervene and the statutory scheme expressly authorized Hartford to allow Duncan to prosecute the claim against Wal-Mart and then obtain a lien on the judgment for the compensation it paid. Duncan does not cite, and we have not found, any authority suggesting Hartford waived or forfeited any of its reimbursement rights by choosing not to intervene and ensure Duncan sought damages for the compensation she received from Hartford. We also note that Duncan's complaint sought damages for lost wages and earning capacity; she simply did not seek those items at trial.

11

employee, the Legislature simply gave statutory recognition to equitable subrogation principles. (*Breese v. Price* (1981) 29 Cal.3d 923, 929; *Sanfax*, *supra*, 19 Cal.3d at p. 876, fn. 7.) Because the employer steps into the injured employee's shoes when it sues the third party tortfeasor, *Breese* further stated the employer may not recover more from the tortfeasor than the employee could have recovered if he or she had sued the tortfeasor. (*Breese*, at p. 928.) Neither *Breese* nor *Sanfax*, however, drew any connection between equitable subrogation principles and an employer's statutory lien rights under section 3856(b). *Breese* and *Sanfax* focused solely on an employer's direct right of action against the third party tortfeasor.

Duncan fails to explain how equitable subrogation principles have any impact on an employer's section 3856(b) lien rights. In exercising those rights, an employer is not stepping into the employee's shoes to sue the third party tortfeasor, and the employer is not recovering more from the tortfeasor than the employee could. Rather, the employee is suing the tortfeasor directly to recover the damages the employee suffered, and the employer simply is exercising its statutory right to reimbursement from the employee's recovery for the compensation the employer paid the employee for the same injuries. Equitable subrogation does not apply here.

Moreover, our courts have rejected the contention that equitable subrogation principles allow trial courts to override an employer's statutory right to full reimbursement from an employee's recovery against a third party tortfeasor. In *Gapusan*, two police officers were seriously injured when a drunk driver collided with their patrol car. The officers sued the drunk driver and the city that employed the officers intervened. The officers and the city settled with the driver for his $200,000 policy limits, but could not agree on how to apportion the settlement proceeds because they were insufficient to reimburse the city for the workers' compensation benefits it paid and the officers for their pain, suffering, and other losses not covered by the workers' compensation system. (*Gapusan*, *supra*, 66 Cal.App.4th at pp. 738-739.)

12

The city claimed entitlement to the entire $200,000 based on a statute similar to section 3856(b) that required full reimbursement to the employer before the employee may recover any portion of a settlement with a third party tortfeasor. The officers argued equitable subrogation principles allowed the trial court to ignore the statute's plain language and apportion the settlement proceeds so the employees received some recovery for their injuries that were not compensated by the workers' compensation system. The trial court agreed with the officers and apportioned the settlement proceeds by awarding the city $100,000 and the officers each $50,000. The City appealed. (*Gapusan*, *supra*, 66 Cal.App.4th at pp. 739-740.)

The Court of Appeal reversed: "Where the Legislature has 'minutely described the limitations and exceptions dealing with a given subject matter,' we may assume it intended to supplant any relevant common law. [Citation.] The Legislature has clearly provided that where, as here, a third party settlement includes the employer's reimbursable benefits, the employer's right of reimbursement takes first and full priority after the payment of litigation expenses and attorney fees, where appropriate. [Citations.] Any common law principles suggesting a different result have thus been abrogated. As another court has observed, there is 'a clear legislative policy militating in favor of reimbursement whenever possible.'" (*Gapusan*, *supra*, 66 Cal.App.4th at p. 741.) In a footnote, *Gapusan* also noted that apportionment would be unavailable in cases involving a judgment for the same reasons. (*Id*. at p. 741, fn. 5.)

Next, relying on the underlying policy of preventing double recovery, Duncan contends the trial court properly excluded from the lien the payments Hartford made for lost wages because the court did not award the lost wages as part of Duncan's judgment against Wal-Mart. According to Duncan, Hartford is entitled to a lien only for those amounts she received both from Hartford as compensation benefits and Wal-Mart as damages under the judgment. Not so.

13

As explained above, section 3856(b)'s plain language grants an employer "a first lien" for "the amount of the employer's expenditure for compensation." (§ 3856(b).)  The lien granted includes all expenditures the employer makes to provide the employee with workers' compensation benefits (*Heaton*, *supra*, 27 Cal.2d at p. 719; *Harvey*, *supra*, 50 Cal.App.3d at p. 761; see § 3207), and attaches to the entire amount of the judgment the employee recovers after litigation expenses regardless of whether the employee proves and recovers all her damages (*Tate*, *supra*, 213 Cal.App.2d at p. 248). Nothing in section 3856(b) requires the employer to show the employee recovered damages from the tortfeasor for all compensation benefits the employer paid the employee.  The employer is entitled to full reimbursement up to the amount of the judgment and the employee is entitled to nothing other than attorney fees and costs until the employer is fully reimbursed.  (*Gapusan*, *supra*, 66 Cal.App.4th at pp. 741-742 & fn. 5; see *Abdala*, *supra*, 3 Cal.App.4th at p. 376.)

Duncan relies on three cases to support her argument.  (See *Sanfax*, *supra*, 19 Cal.3d 862; *Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452; *Soliz v. Spielman* (1974) 44 Cal.App.3d 70.)  Duncan, however, provides only a general citation to each of these cases without identifying a specific page or passage that allegedly supports her contention.  Moreover, Duncan provides no analysis or discussion of these cases.  Our review reveals nothing that requires an employer to show an employee received a double recovery to obtain a lien on the employee's judgment against a third party tortfeasor.

Accordingly, the trial court properly granted Hartford a lien on Duncan's judgment against Wal-Mart and reduced that lien by the amount of reasonable attorney fees and costs the court found Duncan incurred.  The court, however, exceeded its authority by also excluding from the lien the $36,929.32 in lost wages Hartford paid Duncan, but she did not attempt to recover from Wal-Mart.  We therefore modify the trial court's order to include that sum and affirm the order as modified.

14

### III

#### DISPOSITION

We modify the postjudgment order granting Hartford a lien on Duncan's judgment against Wal-Mart to include $36,929.32 in disability benefits that Hartford paid Duncan, and we affirm the modified order granting Hartford a lien in the increased amount of $89,866.33.  Hartford shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

Filed 12/13/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DENISE MICHELLE DUNCAN, | |
| Plaintiff and Respondent, | G054220 |
| v. | (Super. Ct. No. 30-2014-00735595) |
| WAL-MART STORES, INC., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant; | |
| HARTFORD ACCIDENT & INDEMNITY CO., | |
| Claimant and Appellant. | |

Appellant Hartford Accident and Indemnity and nonparty California Workers' Compensation Institute have requested that we certify for publication the opinion filed in the above-entitled matter on November 14, 2017. It appears that our

opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).  The requests are GRANTED.



ARONSON, J.

I CONCUR:


O'LEARY, P. J.